**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

COMMONWEALTH OF PENNSYLVANIA, *et al.*,

                            Plaintiffs,

      **v.**

ELISABETH D. DEVOS, *in her official capacity as*
*Secretary of Education*, *et al.*,

                          Defendants.

Civil Action No. 20-cv-01468-CJN

**PLAINTIFFS' OPPOSITION TO PUTATIVE**
**DEFENDANT-INTERVENORS' MOTION TO**
**INTERVENE**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 2

ARGUMENT ........................................................................................................ 4

    I.      Legal Standard ................................................................................ 4

    II.     Movants' Attempt to Expand the Scope of this Action Should be Rejected ...... 4

    III.    Movants Cannot Intervene as a Matter of Right
                Under Rule 24(a)................................................................................ 6

            A.    Movants Cannot Demonstrate Article III
                    Standing ................................................................................ 6

            B.    Movants Lack a Particularized Interest and
                    Simply Assert General Policy Interests
                    Insufficient for Intervention................................................ 11

            C.    The Disposition of the Action Will Not Impair
                     or Impede Movants' Interests ............................................. 13

            D.    Intervention Will Unduly Delay Adjudication ..................... 14

    IV.    Movants Have Not Established Grounds for
                Permissive Intervention ................................................................. 15

    CONCLUSION...................................................................................................17

# TABLE OF AUTHORITIES

**Page**

CASES

*Abigail All. for Better Access to Developmental Drugs v. Eschenbach*
    469 F.3d 129 (D.C. Cir. 2006) ............................................................9, 11

*Adamski v. McHugh*
    304 F. Supp. 3d 227 (D.D.C. 2015) ...........................................................12

*Alternative Research & Development Foundation v. Veneman*
    262 F.3d 406 (D.C. Cir. 2001) ..................................................................14

*Cigar Association of America v. U.S. Food and Drug Administration*
    323 F.R.D. 54 (D.D.C. 2017) ...............................................................8, 9

*City of Cleveland v. NRC*
    17 F.3d 1515 (D.C. Cir. 1994) ..................................................................4

*Crossroads Grassroots Policy Strategies v. FEC*
    788 F.3d 312 (D.C. Cir. 2015) ..............................................................4, 8

*Ctr. for Biological Diversity v. EPA*
    274 F.R.D. 305 (D.D.C. 2011) ..................................................................16

*Ctr. for Responsible Sci. v. Gottlieb*
    346 F. Supp. 3d 29 (D.D.C. 2018) ...................................................7, 8, 10, 13

*Davis v. Monroe County Board of Education*
    526 U.S. 629 (1999) ...................................................................................12

*Deutsche Bank Nat'l Tr. Co. v. FDIC*
    717 F.3d 189 (D.C. Cir. 2013) ...........................................................4, 6, 11

*Donaldson v. United States*
    400 U.S. 517 (1971) ...................................................................................13

*EEOC v. Nat'l Children's Ctr., Inc.*
    146 F.3d 1042 (D.C. Cir. 1998) ...........................................................4, 15

*Equal Rights Ctr. v. Post Props.*
    633 F.3d 1136 (D.C. Cir. 2011) .................................................................7

*Feminist Majority Foundation v. Hurley*
    911 F.3d 674 (4th Cir. 2018) ....................................................................12

*Food & Water Watch, Inc. v. Vilsack*
    808 F.3d 905 (D.C. Cir. 2015) ...........................................................7, 13

# TABLE OF AUTHORITIES
## (continued)

Page

*Fund for Animals, Inc. v. Norton
  322 F.3d 728 (D.C. Cir. 2003) ...................................................................4

Grassroots Recycling Network v. EPA
  429 F.3d 1109 (D.C. Cir. 2005) ................................................................9

Greene v. U.S.
  376 U.S. 149 (1964) ..................................................................................10

Illinois Bell Tel. v. FCC
  911 F.2d 776 (D.C. Cir. 1990) ..................................................................6

Lamprecht v. F.C.C.
  958 F.2d 382 (D.C. Cir. 1992) ..................................................................5

Lujan v. Defs. of Wildlife
  504 U.S. 555 (1992) ..............................................................................7, 11

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.
  463 U.S. 29 (1983) .....................................................................................6

Mova Pharm. Corp. v. Shalala
  140 F. 3d 1060 (D.C. Cir. 1998) .............................................................14

Nat'l R.R. Passenger Corp. v. Boston and Maine Corp.
  503 U.S. 407 (1992) ...................................................................................6

Nat'l Res. Def. Council v. Pena
  147 F.3d 1012 (D.C. Cir. 1998) ..............................................................10

Nat'l Whistleblower Ctr. v. HHS
  839 F. Supp. 2d 40 (D.D.C. 2012) ..........................................................10

*Old Dominion Elec. Coop. v. FERC
  892 F.3d 1223 (D.C. Cir. 2018) ............................................................4, 6

Roane v. Leonhart
  741 F.3d 147 (D.C. Cir. 2014) ................................................................14

Roeder v. Islamic Republic of Iran
  333 F.3d 228 (D.C. Cir. 2003) ..................................................................6

S. Christian Leadership Conference v. Kelley
  747 F.2d 777 (D.C.Cir. 1984) .................................................................11

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Sea–Land Serv., Inc. v. Dep't of Transp.*
    137 F.3d 640 (D.C.Cir. 1998) ..................................................................11

*\*Sec. & Exch. Comm'n v. Chenery Corp.*
    318 U.S. 80 (1943) ...................................................................................6

*\*Seminole Nation of Oklahoma v. Norton*
    206 F.R.D. 1 (D.D.C. 2001) ...............................................................5, 12

*Sevier v. Lowenthal*
    302 F. Supp. 3d 312 (D.D.C. 2018) .......................................................15

*Smoke v. Norton*
    252 F.3d 468 (D.C. Cir. 2001) ...............................................................14

*Speech First, Inc. v. Fenves*
    384 F. Supp. 3d 732 (W.D. Tex. 2019) ..................................................12

*Speech First, Inc. v. Schlissel*
    939 F.3d 756 (6th Cir. 2019) ..................................................................12

*Stewart v. Rubin*
    948 F. Supp. 1077 (D.D.C. 1996) ...........................................................11

*Turlock Irrigation Dist. v. FERC*
    786 F.3d 18 (D.C. Cir. 2015) ....................................................................8

*U.S. Ecology, Inc. v. U.S. Dep't of Interior*
    231 F.3d 20 (D.C. Cir. 2000) ..................................................................10

*\*Vinson v. Washington Gas Light Co.*
    321 U.S. 489 (1944) .................................................................................5

*Winpisinger v. Watson*
    628 F.2d 133 (D.C. Cir. 1980) ..................................................................7

**FEDERAL STATUTES**

5 United States Code
    § 705 ....................................................................................................1, 2
    § 706 .........................................................................................................2

28 United States Code
    § 2401 ......................................................................................................12

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**U.S. CONSTITUTIONAL PROVISIONS**

United States Constitution Article 3 ......................................................................... *passim*

**COURT RULES**

*Federal Rules of Civil Procedure
    Rule 24 ................................................................................................................. *passim*

**OTHER AUTHORITIES**

*Nondiscrimination on the Basis of Sex in Education Programs or Activities
    Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,026 (May 19, 2020)
    (to be codified at 34 C.F.R pt. 106) .............................................................. *passim*

**INTRODUCTION**

Defendants violated the Administrative Procedure Act in promulgating regulations that impose sweeping changes to the procedural and substantive requirements of Title IX of the Education Amendments of 1972. Those regulations will make it more difficult for schools to prevent, stop, and effectively remedy sexual harassment[1] in their education programs and activities; ensure a safe education experience that protects students from harm; and provide all students a fair process when complaints of harassment are filed. Time is of the essence because Defendants mandated that these unlawful regulations become effective on August 14, 2020. Plaintiffs have moved for preliminary injunction or a stay under 5 U.S.C. § 705 to address the irreparable harm that is already occurring and will continue to occur if the regulations become effective as planned. Yet, Movants—three non-governmental organizations seeking to intervene to further a generalized policy interest—wish to inject into this matter constitutional claims that are beyond the scope of Plaintiffs' Administrative Procedure Act ("APA") claims.

Intervention would be futile here. Movants seek to litigate an entirely different case from the one before the Court, requesting a ruling that the regulations at issue are *constitutionally required*, and thus any inconsistent prior Department policy or state or local school code-of-conduct or law is invalid. The Court is foreclosed from considering Movants' legal theory in deciding Plaintiffs' APA claims, because when they promulgated the regulations Defendants did not rely on the theory—and, indeed, have never even asserted—that the challenged regulations are required by the Constitution.

In addition, Movants fail to satisfy the legal requirements for intervention under Federal Rule of Civil Procedure 24. They cannot demonstrate Article III standing, as required for intervention. They lack a legally protected interest in this matter and are thus not entitled to intervene as of right. And they are not entitled to permissive intervention, not only because

---

[1] The term "sexual harassment" encompasses all forms of sexual harassment, including sexual violence and sexual assault.

Movants fail to meet the requisite criteria but also because allowing intervention would unduly delay adjudication of this case, drastically expand the scope of the issues in the litigation, and prejudice Plaintiffs, who seek expeditious resolution in order to avert irreparable harm. The motion to intervene should be denied.

## BACKGROUND

In May 2020, Defendants promulgated the regulations at issue in this case, *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,026 (May 19, 2020) (to be codified at 34 C.F.R Part 106) ("Rule"). On June 4, 2020, Plaintiffs filed this action, alleging that the Rule violated the APA because it exceeded the statutory authority of the Department of Education ("Department") under Title IX, was contrary to both the APA and Title IX, arbitrary and capricious, and was issued without observance of the procedures required by the APA. 5 U.S.C. § 706(2)(A), (C), & (D). Plaintiffs did not allege that the Rule violates the Constitution. More importantly, the Department did not claim during its rulemaking that the Constitution requires the Rule's new standards and procedures for administrative enforcement of Title IX, let alone that the Constitution required codification of those standards and procedures through rulemaking.

On June 23, 2020, Plaintiffs filed a Motion for Preliminary Injunction or 5 U.S.C. § 705 Stay Pending Judicial Review (Dkt. No. 22) ("Plaintiffs' Motion"). That motion seeks to prevent irreparable harm that is already occurring and that will only worsen if the Rule becomes effective on August 14, 2020. The Rule is requiring and will require schools—in the midst of a pandemic—to incur significant compliance costs that will deplete already limited resources in order to meet the Department's unreasonable deadline for compliance. Plaintiffs' Motion also detailed the increases in unaddressed sexual harassment on school campuses that will result from the Rule and the attendant health and safety harms to students and schools. Plaintiffs challenge the Rule as unlawfully promulgated under the APA and accordingly, Plaintiffs request the Court to vacate and set aside the Rule. Complaint ¶¶ 106-115. The motion remains pending.

Movants now seek to intervene. Movants themselves are not subject to Title IX and its implementing regulations and do not seek to intervene because Title IX and its implementing regulations will impose any obligations directly on them. Rather, Movants are "nonprofit organizations dedicated to promoting free speech and due process on college campuses." Mot. to Intervene as Defs. at 4 (Dkt. No. 27) ("Mot. to Intervene"). According to Movants, the Foundation for Individual Rights in Education ("FIRE") is a nonprofit membership organization that educates students and faculty involved in disciplinary proceedings and members of its student network about their constitutional free-speech and due-process rights. The Independent Women's Law Center ("IWLC"), similarly, states that it is a nonprofit organization that advocates for greater free-speech and due-process protections for college students subject to bias and harassment policies. Speech First, Inc. ("Speech First") states that it is a membership association that seeks to challenge school harassment policies to the extent they chill free speech. Mot. to Intervene at 4-7.

Movants acknowledge that the parties have not raised the claims they seek to assert in this litigation. Movants nonetheless "seek to intervene in this case . . . to advance a legal theory that the Department of Education will not"—namely, that vacating the Rule would violate the U.S. Constitution. Mot. to Intervene at 2. Movants emphasize that "the Department has been careful not to say that the First Amendment required it to use [a particular] definition of 'sexual harassment,' or that the Due Process Clause required it to adopt the precise procedural protections in the Final Rule." Mot. to Intervene at 14. Movants further acknowledge that, given the limited scope of this APA litigation, "the Court would not be required to consider Movants' constitutional arguments if they were presented only in an amicus brief." Mot. to Intervene at 11.

**ARGUMENT**

I.   **LEGAL STANDARD**

Intervention as of right under Federal Rule of Civil Procedure 24(a) requires the movant to (1) file a timely application to intervene; (2) demonstrate a legally protected interest in the action; (3) show that the action threatens to impair that interest; and (4) show that no party in the action can adequately represent that interest. *See Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 192 (D.C. Cir. 2013). The movant must satisfy all four criteria for intervention. *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015). To demonstrate a legally protected interest, the D.C. Circuit requires proposed intervenors to demonstrate Article III standing. *Crossroads*, 788 F.3d at 316; *see also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732-33 (D.C. Cir. 2003); *City of Cleveland v. NRC*, 17 F.3d 1515, 1517 (D.C. Cir. 1994); *Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1232 n.2 (D.C. Cir. 2018), *cert. denied*, 139 S. Ct. 794 (2019).

Permissive intervention under Federal Rule of Civil Procedure 24(b) requires the movant to demonstrate "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law and fact in common with the main action." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). The Court has broad discretion to refuse permissive intervention where it "will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

II.   **MOVANTS' ATTEMPT TO EXPAND THE SCOPE OF THIS ACTION SHOULD BE REJECTED**

Movants seek to intervene in order to "advance a legal theory that the Department of Education will not"—namely, that certain provisions of the Rule are required by the First and Fourteenth Amendments. Mot. to Intervene at 1-2. But an intervenor may not raise new issues that fall outside the scope of those presented by the parties. Rather, "it is well settled in this circuit that '[a]n intervening party may join issue only on a matter that has been brought before the court by another party.'" *Seminole Nation of Oklahoma v. Norton*, 206 F.R.D. 1, 7 (D.D.C. 2001) (quoting *Illinois Bell Tel. v. FCC*, 911 F.2d 776, 786 (D.C. Cir. 1990)); *see also Vinson v.*

*Washington Gas Light Co.,* 321 U.S. 489, 498 (1944) ("[A]n intervenor is admitted to the proceedings as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding."); *Lamprecht v. F.C.C.*, 958 F.2d 382, 389 (D.C. Cir. 1992).

Movants' basis for intervention thus rests on an improper effort to enlarge the issues before the Court. Plaintiffs' complaint challenges the Rule under the APA, alleging that it is contrary to Title IX and otherwise substantively and procedurally defective. Movants, however, seek to defend the Rule "without regard to what Title IX and the Administrative Procedure Act might otherwise require." Mot. to Intervene at 4 (discussing definition of sexual harassment). In fact, they suggest that, in their view, whether the Rule "is consistent with the federal statutes that provide the basis for Plaintiffs' suit" is simply beside the point in light of their constitutional arguments. *See id.* But as Movants concede, the Department has acknowledged that the Rule is not mandated by the Constitution. Because the scope of Plaintiffs' complaint is limited to the Rule's non-compliance with the APA, Movants are asking the Court to expand the proceedings to include constitutional questions that are not at issue in the litigation and not presented by the underlying rulemaking.

Movants' brief suggests that their real issue is not with the Rule or the States' challenge to it, but with the Department's prior policies relating to Title IX. They make clear that they seek a decision "establish[ing] that the Department *cannot* revert to the definitions and policies it has used in the past." Mot. to Intervene at 11. And Movants seek the same relief from this Court regarding university conduct codes. Mot. to Intervene at 5, 10. But this action is not about the legality of the Department's prior Title IX policies or schools' codes of conduct. It is about the Department's latest Rule and the specific claims raised in the States' complaint challenging it. And as to those claims, Movants have very little to say. Movants are effectively seeking advisory opinions on whether certain forms of verbal sexual harassment are protected speech or on what process is due in myriad school disciplinary proceedings across the country. This Court should reject their attempt to hijack this lawsuit to advance their own challenge to prior actions taken by

5

the Department that are not at issue in this case. As the D.C. Circuit warned, "if such easy manipulation were availing, an intervenor would not, in practice, be limited at all to the issues raised by a petitioner." *Illinois Bell Tel.*, 911 F.2d at 786.

Moreover, even if Movants were permitted to intervene, the Court could not consider their constitutional arguments. An administrative "agency's action may not be upheld on grounds other than those relied on by the agency." *Nat'l R.R. Passenger Corp. v. Boston and Maine Corp.* 503 U.S. 407, 420 (1992) (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 88 (1943)). Instead, "it is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (internal citations omitted). Movants specify that they wish to intervene to defend the Rule on grounds that the Department did not embrace in promulgating it. *See* Mot. to Intervene at 3-4. And they expressly acknowledge that the Department will not make the argument. Under *Chenery* and its progeny, the Court cannot uphold the Rule on these grounds.

III.    MOVANTS CANNOT INTERVENE AS A MATTER OF RIGHT UNDER RULE 24(A)

A.    Movants Cannot Demonstrate Article III Standing

Because intervenors become "full-blown parties" to a litigation, the "legally protected interest" required by Rule 24(a) must be sufficient to confer Article III standing. *Old Dominion*, 892 F.3d at 1233. Contrary to Movants' assertion, Mot. to Intervene at 8, this Circuit requires a separate showing of Article III standing. *Deutsche Bank*, 717 F.3d at 193 (explaining that despite dicta in *Roeder v. Islamic Republic of Iran*, 333 F.3d 228 (D.C. Cir. 2003), proposed intervenors must demonstrate Article III standing)). The Court must also consider whether the Movants have a concrete interest, and "whether the existing parties can be expected to vindicate the would-be intervenor's interests." *Old Dominion*, 892 F.3d at 1233.

Organizations can satisfy Article III standing in one of two ways: by suing on their own behalf ("organizational standing") or on behalf of their members ("representational standing"). *Ctr. for Responsible Sci. v. Gottlieb* ("*CRS*"), 346 F. Supp. 3d 29, 36 (D.D.C. 2018) (citing

*Abigail All. for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 132 (D.C. Cir. 2006)). Movants lack standing under either theory.

To demonstrate organizational standing, Movants must satisfy the three familiar elements of standing: (1) injury-in-fact, (2) causation, and (3) redressability. *CRS*, 346 F. Supp. 3d at 36 (citing *Equal Rights Ctr. v. Post Props.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011)). The "injury-in-fact" prong requires "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quotations omitted). For an organization, this means alleging "a concrete and demonstrable injury to [its] activities." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (citations omitted). Movants' allegations amount to no more than a "mere setback" to their "abstract social interests," which is "not sufficient to establish injury-in-fact." *Equal Rights Ctr.*, 633 F.3d at 1138.

Movants do not allege they have suffered or are about to suffer any "concrete and demonstrable injury" to their activities. Instead, they seek to protect uncertain anticipated future benefits they believe will follow from the Rule's implementation: the ability to "reallocate resources to other activities that would otherwise be used to resist unconstitutional disciplinary proceedings." Mot. to Intervene at 9. This is far too speculative to constitute a concrete injury. *Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980) (declining to find standing where "a court would have to accept a number of very speculative inferences and assumptions" to connect the alleged injury to the lawsuit). In fact, Movants cannot even say with certainty that the implemented Rule will free up any of their resources. The Rule permits schools to continue adjudicating "non-Title IX" sexual harassment (including conduct that Movants—but not the Department or a federal court—believe is protected by the First Amendment) using separate code of conduct proceedings, 85 Fed. Reg. at 30,090, without using the Rule's new inflexible and prescriptive procedural requirements that Movants—but not the Department or a federal court—believe are all required by the Due Process Clause. This speculative interest falls far short of establishing an Article III injury. *Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir.

2015) (observing that "predictions of future events (especially future actions taken by third parties) are too speculative to support a claim of standing") (citations omitted).

Movants incorrectly claim that their interest is the "mirror-image" of Plaintiffs' interest in this case. Mot. to Intervene at 9. Not so. If the Rule becomes effective, Plaintiffs' schools and students will imminently suffer injury in the form of substantial compliance costs and adverse education, safety, and health impacts detailed in the nearly 70 declarations filed by Plaintiffs. Movants' alleged injury, on the other hand, is the loss of the hypothetical future opportunity to reallocate an unspecified quantity of resources from their efforts "resist[ing] unconstitutional disciplinary proceedings." Mot. to Intervene at 9. The former is concrete, particularized, and imminent, while the latter is speculative and hypothetical. Moreover, even if Movant's asserted injury was not entirely hypothetical, "the devotion of resources to advocacy for the organization's preferred policy . . . falls short" of what is required to show injury to an organization. *CRS*, 346 F. Supp. 3d at 37; *see Turlock*, 786 F.3d at 24 ("The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization.") (quotations and citation omitted); *Crossroads*, 788 F.3d at 317 (organization's diversion of resources to litigation is a budgetary choice that cannot qualify as an injury in fact) (citations omitted).

In *Cigar Association of America v. U.S. Food and Drug Administration*, 323 F.R.D. 54 (D.D.C. 2017), public health organizations sought to intervene as defendants in a challenge to the FDA's regulations concerning tobacco products brought by associations representing members of the cigar industry. The court denied the proposed intervenors' motion because their alleged harm—that striking down the regulations would hinder their anti-tobacco efforts and force them to expend additional resources to meet their objectives—was not a sufficiently concrete injury to establish standing. *Id.* at 62-63 ("Each organization does no more than assert that it will have to expend some undefined amount of additional resources if the Rule is vacated. Such a generalized harm . . . amounts to 'no more than an abstract injury to its interests.'") (quoting *Food & Water*

*Watch*, 808 F.3d at 920). Movants' alleged injury is even more abstract in this case, where the new Rule has not even taken effect; rather than being forced to expend additional resources if the Rule is declared invalid, Movants' expenditures will simply remain at their current levels because the Department's Title IX regulations have been in place since 1975 and the prior policies have been in place for nearly 30 years.

Movants also fail to establish representational standing. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Abigail All.*, 469 F.3d at 133. Because Movants have not shown that any of their members would have standing to sue in their own right, they cannot show representational standing.

IWLC and Speech First do not identify any members who will be harmed if Plaintiffs' challenge to the Rule is successful, and these two movants cannot establish representative standing. In addition, the vague allegation that some of their members "have been subject in the past, and could be subject in the future, to Title IX disciplinary proceedings," Mot. to Intervene at 7, is insufficient to establish standing under the well-settled precedent in this Circuit. *See, e.g.*, *Grassroots Recycling Network v. EPA*, 429 F.3d 1109, 1112-13 (D.C. Cir. 2005) (observing that "events that, although by no means impossible, are at this time neither actual nor imminent but wholly conjectural" are insufficient to confer standing).

FIRE alleges that an unnamed individual student member who is currently subject to a Title IX proceeding pending at a public university will be harmed by the loss of "important procedural protections" if their case is adjudicated under existing university policy rather than policy amended to comply with the Rule. Mot. to Intervene at 6. But the Rule will not apply retroactively to claims brought prior to its effective date. *See* 85 Fed. Reg. at 30,061 (indicating that the Rule will not be enforced retroactively); *Greene v. U.S.* 376 U.S. 149, 160 (1964) (where regulation is issued after claim is presented, application of new regulation to decision-making

process "necessarily requires" impermissible retroactive application of the new regulation). Therefore, the student member will not receive, and thus cannot lose, any protection under the Rule.

Even if the Rule could be applied retroactively, FIRE has not provided requisite factual allegations to meet the standing requirements. In addition to injury-in-fact, Movants "must [establish] a causal connection between the injury and the conduct complained of — the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *CRS*, 346 F. Supp. 3d at 36 (alterations in original) (citation and quotations omitted). And "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (citation and quotations omitted). A "deficiency on any one of the three prongs suffices to defeat standing." *U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000). In a suit for injunctive relief, "past harm is not sufficient to establish an injury in fact." *Nat'l Whistleblower Ctr. v. HHS*, 839 F. Supp. 2d 40, 45-46 (D.D.C. 2012). The plaintiff, rather, must show "a real and immediate — as opposed to merely conjectural or hypothetical — threat of future injury." *Nat'l Res. Def. Council v. Pena*, 147 F.3d 1012, 1022 (D.C. Cir. 1998) (citation omitted).

FIRE's only allegation is that the unnamed member is subject to a proceeding at a public university based on sexual misconduct and would benefit from application of the Rule. But any unspecified future harm that the member might be subjected to would be the result of an "independent action of" the public university, a "third party not before the court" and not the result of the Rule being enjoined. *CRS*, 346 F. Supp. 3d at 36. And, even if the public university were before this Court, FIRE does not allege that the public university at which the proceeding is pending has taken or will take a specific, concrete action in violation of the not-yet-implemented Rule to create a "legally protected interest" in the Rule's application, or allege how a determination from the Court that the Rule is mandated by the Constitution would redress a (or any) speculative future harm caused by the public university. *See Lujan*, 504 U.S. at 560; *see also Sea-Land Serv., Inc. v. Dep't of Transp.*, 137 F.3d 640, 648 (D.C. Cir. 1998) (noting that the

creation of adverse legal precedent is insufficient to create Article III standing, even where future litigation is foreseeable). Because this student member cannot show injury-in-fact sufficient to establish standing in their own right, FIRE does not have representational standing to sue on their behalf. *Abigail All.*, 469 F.3d at 133.

### B.   Movants Lack a Particularized Interest and Simply Assert General Policy Interests Insufficient for Intervention

Under Rule 24(a), a sufficient interest must be "direct, substantial, and legally protectable." *Stewart v. Rubin*, 948 F. Supp. 1077, 1105 (D.D.C. 1996) (citation omitted); *S. Christian Leadership Conference v. Kelley*, 747 F.2d 777, 779 (D.C. Cir. 1984). As discussed above, Movants seek to intervene "to advance a legal theory that the Department of Education will not: that many of the [R]ule's protections . . . are *constitutionally required*." Mot. to Intervene at 1-2. Given the scope of this case—an APA challenge to the Rule—Movants' intervention is an attempt to obtain a purely advisory opinion in the form of a declaratory judgment or to impermissibly expand the scope of the litigation to challenge past or hypothetical future policies for which they would lack standing (mootness and ripeness, respectively) in any event. Accordingly, they have no legally protected interest in this action. *Deutsche Bank*, 717 F.3d at 192.

Moreover, because Movants actually seek to challenge the Department's prior policies in effect before the Rule, they do not "demonstrate a legally protected interest in *the action*." *Id.* (emphasis added). Indeed, Movants cite no authority that federal agencies are *compelled* to issue regulations or guidance—the actions subject to an APA challenge—to codify constitutional standards.[2]

---

[2] In fact, the difficulty Movants would face in attempting to clear various procedural hurdles required to bring a facial challenge to the Department's prior policies underscores why they cannot intervene in this case. For example, in order to avoid the six-year statute of limitations on APA challenges to agency regulations imposed by 28 U.S.C. § 2401, Movants would need to base their claims on an instance in which the Department applied those policies and establish that they have standing to challenge that application. *See Adamski v. McHugh*, 304 F. Supp. 3d 227, 235 (D.D.C. 2015). Movants' attempt to "circumvent[] other rules of procedure by simply (continued…)

Movants have not set forth any specific allegations to support their claim that if the Rule is implemented, they will cease expending resources on litigating Title IX-related policies that purportedly chill free speech. The four lawsuits Speech First relies on as examples of its expended resources are not even Title IX cases.[3] Instead, all four cases involve specific student conduct codes and campus bias response teams that could continue to exist regardless of whether the Rule is upheld, enjoined, or vacated. FIRE points to its involvement in Title IX litigation, particularly as amicus curiae, but does not identify specific cases in its motion. FIRE's involvement in litigation brought by plaintiff survivors of sexual harassment, *see, e.g.*, *Feminist Majority Foundation v. Hurley*, 911 F.3d 674 (4th Cir. 2018), will also continue regardless of whether the Rule is upheld, enjoined, or vacated, because the legal standard for civil actions under Title IX's implied private right of action, *Davis v. Monroe County Board of Education*, 526 U.S. 629, 650 (1999), will remain in effect. Such cases cannot support FIRE's assertion that it will expend fewer resources on litigation if a rule adopting the *Davis* standard is implemented for administrative enforcement.

That Movants seek to intervene in several different actions[4] and test their theories in different courts only furthers the point that they have no particularized interest at stake in this

---

(…continued)
intervening in another's lawsuit and expanding the scope of the issues presented therein" is precisely what the rule set forth in *Illinois Bell* and its progeny was designed to prevent. *Seminole Nation*, 206 F.R.D. at 7.

[3] *Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019); *Speech First, Inc. v. Fenves*, 384 F. Supp. 3d 732 (W.D. Tex. 2019), *appeal docketed,* No. 19-50529 (5th Cir. June 7, 2019); *Speech First, Inc. v. Killeen*, No. 19-3142 (C.D. Ill. Sept. 17, 2019), *appeal docketed*, No. 19-2807 (7th Cir. Sept. 19, 2019); *Speech First, Inc. v. Wintersteen*, No. 20-0002 (S.D. Iowa Jan. 2, 2020).

[4] Mot. to Intervene, *Know Your IX v. DeVos*, No. 20-1224 (D. Md. June 24, 2020), Dkt. No. 20; Memo. in Supp. of FIRE's Mot. to Intervene, *New York v. U.S. Dep't of Educ.*, No. 20-4260 (S.D.N.Y. June 29, 2020), Dkt. No. 25 (IWLC and Speech First have not moved for intervention).

litigation, but are merely advancing a generalized policy interest. To the extent that, as Movants attest, they frequently litigate Title IX cases addressing free-speech and due-process issues, they are free to argue in those cases that specific local codes of conduct or state statutes are unconstitutional if they are inconsistent with the Rule. Their attempt to secure here a declaratory ruling that has not been issued in their other cases further reveals a generalized interest of advancing policy interests not tied specifically to this case, which does not support a legally protected interest in this litigation.

Movants cannot intervene in order "to vindicate their own value preferences through the judicial process." *CRS*, 346 F. Supp. 3d at 36-37 (quoting *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011)) (internal quotation marks omitted). But that is what they seek here: a ruling that the Rule's sexual harassment definition and grievance process requirements are mandated by the Constitution, and also, in effect, a ruling that invalidates prior Department policy and all inconsistent state school codes of conduct—without asserting a particularized injury that will result if Plaintiffs prevail. *See, e.g.*, *Food & Water Watch*, 808 F.3d. at 919 (conduct must "perceptibly impair[] the organization's ability to provide services" to meet injury-in-fact prong) (citation omitted). The Court should reject their effort.

### C.  The Disposition of the Action Will Not Impair or Impede Movants' Interests

To establish a right to intervene, a movant must also establish that it possesses a "significantly protectable" interest, *Donaldson v. United States*, 400 U.S. 517, 531 (1971), by showing that it "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," Fed. R. Civ. P. 24(a)(2); *see also Mova Pharm. Corp. v. Shalala*, 140 F. 3d 1060, 1074 (D.C. Cir. 1998).

As Movants admit, their interest is in ensuring that the Department can never issue policy or guidance that differs from the Rule. Mot. to Intervene at 2. And they seek to do so by asserting that this Rule is constitutionally required. Mot. to Intervene at 2. This claim is not precluded by a decision that this Rule violates the APA, s*ee Alternative Research & Development Foundation v.*

13

*Veneman*, 262 F.3d 406, 411 (D.C. Cir. 2001) (finding that movants are not precluded from challenging future rules not at issue in the present action), so there is no risk that this action will impair their interests (aside from their generalized interest in securing the policy outcome reflected in the Rule).

> **D.    Intervention Will Unduly Delay Adjudication**

In determining whether a motion to intervene is timely, the inquiry is not focused only on the timing of the motion to intervene in the litigation, but also "the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (quoting *United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980)). Motions to intervene must not allow potential intervenors to "unduly disrupt[] litigation, to the unfair detriment of the existing parties." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (citation and internal quotation marks omitted). Permitting Movants to intervene here would not only inject new issues into the litigation, as detailed above, but also severely prejudice Plaintiffs who are irreparably harmed by the Rule's unreasonable compliance date. And to the extent Movants actually seek to invalidate the Departments' prior policy in effect for nearly 30 years, Mot. to Intervene at 2, including this Administration's 2017 Questions & Answers guidance, U.S. Dep't of Educ., Q&A on Campus Sexual Misconduct (Sept. 2017). That request is untimely because Movants could have done so years ago.

Time is of the essence in this case. Plaintiffs have moved for a stay or preliminary injunction of Defendants' Rule because it will inflict irreparable harm on Plaintiff States and their schools and students if allowed to become effective on August 14, 2020. As argued in Plaintiffs' moving papers, the Rule is already forcing schools to divert strained resources intended to address the unprecedented and significant disruptions caused by the pandemic. As discussed above, Movants concede that they are not seeking to defend the Rule against Plaintiffs' APA challenge, but seek to assert that the Constitution requires the Rule and that prior Department policies implementing Title IX for nearly 30 years are unconstitutional. If Movants

are seeking to invalidate past action, then they should have attempted to challenge *those*
Department policies. Moreover, briefing and disposing of the issues raised by Movants'
proposed claims in this litigation will be a distraction that results in undue delay to the detriment
of Plaintiff States and their schools and students, all of whom continually incur compliance costs
and other increasing harms as the Rule's effective date approaches. See Plaintiffs' Motion 37-45.
Accordingly, the motion should be denied as untimely.

## IV.  MOVANTS HAVE NOT ESTABLISHED GROUNDS FOR PERMISSIVE INTERVENTION

For the same reasons that Movants are not entitled to mandatory intervention, the Court
should also deny permissive intervention. In addition, permissive intervention is unwarranted
because Movants cannot demonstrate standing, *see supra* Part III.A. *Sevier v. Lowenthal*, 302 F.
Supp. 3d 312, 323 (D.D.C. 2018) (citing *Defs. of Wildlife & Sierra Club v. Perciasepe*, 714 F.3d
1317, 1327-1328 (D.C. Cir. 2013) (noting that the D.C. Circuit has at least twice declined to
address permissive intervention on appeal where the proposed intervenor lacked such standing,
and declining to reach the issue in that case in the absence of standing)).

Even if the Court finds that Movants have standing to intervene, the Court should deny
permissive intervention. A movant must demonstrate an independent ground for subject matter
jurisdiction, and a claim or defense that has a question of law and fact in common with the main
action, in order to be granted permissive intervention. *EEOC v. Nat'l Children's Ctr. Inc.*, 146
F.3d 1042, 1046 (D.C. Cir. 1998). Plaintiffs expect their claims to be resolved on summary
judgment because there will be no questions of fact to be resolved by the Court. As to the
questions of law, Movants specifically oppose deciding this matter on the legal claims raised in
the complaint. Instead, they seek to uphold the Rule and invalidate prior Department policies and
sexual harassment laws, codes, and policies that States and their schools already enforce on
strictly constitutional grounds not raised by Defendants. As a result, Movants' proposed
intervention does not share common questions of law with the litigation. And although the Court
has subject matter jurisdiction over Plaintiffs' claims, it is not clear that the Court has subject
matter jurisdiction over the claim Movants seek to raise, because Movants do not present a

justiciable case or controversy in seeking to challenge past and hypothetical future Department regulations—i.e., such claims are either moot or unripe for adjudication and Movants' request is, in effect, for an advisory opinion. *Cf.* U.S. Const. art. III, § 2.

The Court also has the discretion to determine whether intervention "will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). As noted above, *see supra* Part III.D., intervention will result in an unnecessary distraction that will unduly delay adjudication of Plaintiffs' claims, including the pending motion for stay or preliminary injunction, and result in prejudice and irreparable harm to Plaintiff States and their schools and students. Movants cannot show how they would be able to "contribute to the full development of the factual and legal issues presented" any differently than they could as an amicus, as legality of the Rule is judged in part on the Department's rationale for the contemporaneous basis for its decision included in the proposed rule, and the Department is more than capable of fleshing out the legal arguments tied to the actual contemporaneous basis for its decision (which did not embrace Movants' constitutional theory and which is the proper focus in an APA case). *Cf. Ctr. for Biological Diversity v. EPA*, 274 F.R.D. 305, 313-314 (D.D.C. 2011).

Additionally, litigation of Movants' constitutional claims, which are largely untethered to the current Rule and APA action, will prejudice Plaintiffs' rights. For example, where the Rule requires a school to dismiss a Title IX sexual harassment complaint because the allegations do not meet the new definition of sexual harassment, or because the incident did not occur in the school's program or activity, the Rule provides that "such a dismissal does not preclude action under another provision of the [school's] code of conduct." Rule §106.45(b)(3)(i). Thus, the Rule that Defendants and Movants both defend recognizes States' and schools' ability to regulate conduct that the Department has deemed outside the scope of Title IX. But Movants' purported interest in this matter expands beyond the Rule to include challenging enforcement of unspecified university conduct codes that prohibit sexual harassment or use "expansive definitions" of sexual harassment. Mot. to Intervene at 5, 10. In some Plaintiff States, such

definitions in university conduct codes are mandated by State statute, regulation, or court precedent. As a result, Movants' proposed intervention will encompass challenges to State law. Movants' quest to override State university and college conduct codes to mandate use of the Rule's definition of sexual harassment goes far beyond the scope of this litigation, and will unduly prejudice Plaintiff States and their schools.

Movants' claim that their intervention will conserve judicial resources is meritless. Mot. to Intervene at 16. The only way that Movants' intervention will further reduce litigation is if it results not only in upholding the Title IX Rule, but also in the invalidation of other sexual harassment codes and policies that States and their schools already enforce. Movants' motion and proposed answer reveal that this indeed is their intention, but, as discussed above, such an intervention would result in an impermissible expansion of the scope of this litigation far beyond the APA claims at issue.

The Court should exercise its discretion and deny Movants' motion for permissive intervention.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Movants' motion to intervene.


Dated: July 1, 2020                                    Respectfully Submitted,


**GURBIR S. GREWAL**                                   **JOSH SHAPIRO**
*Attorney General*                                     *Attorney General*
*State of New Jersey*                                  *Commonwealth of Pennsylvania*
MAYUR P. SAXENA                                        MICHAEL J. FISCHER
Assistant Attorney General                             Chief Deputy Attorney General

*/s/ Marie Soueid*                                      */s/ Aimee D. Thomson*
MARIE SOUEID                                           AIMEE D. THOMSON (D.C. Bar No.
ESTELLE BRONSTEIN                                      1045758)
EMILY WANGER                                           RYAN B. SMITH
Deputy Attorneys General                               JACOB B. BOYER
New Jersey Attorney General's Office                   Deputy Attorneys General
Richard J. Hughes Justice Complex                      Office of Attorney General

25 Market Street
Trenton, NJ 08625
(609) 376-2564
Marie.Soueid@law.njoag.gov
*Attorneys for Plaintiff State of New Jersey*

1600 Arch Street
Suite 300
Philadelphia, PA 19103
(267) 374-2787
athomson@attorneygeneral.gov
*Attorneys for Plaintiff Commonwealth of Pennsylvania*

**XAVIER BECERRA**
*Attorney General of California*
*State of California*
MICHAEL NEWMAN
Senior Assistant Attorney General
CHRISTINE CHUANG
Supervising Deputy Attorney General

*/s/ Laura Faer*
LAURA FAER
CHRISTINA RIEHL
MARISOL LEÓN
SHUBHRA SHIVPURI
SRIVIDYA PANCHALAM
Deputy Attorneys General
California Attorney General's Office
1515 Clay Street, 20th Floor
Oakland, CA 94612-0552
(510) 879-3305
Laura.Faer@doj.ca.gov
Attorneys for Plaintiff State of California

**PHILIP J. WEISER**
*Attorney General*
*State of Colorado*

*/s/ Eric R. Olson*
ERIC R. OLSON
Solicitor General
MARTHA FULFORD (D.C. Bar No. 101194)
First Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
eric.olson@coag.gov
martha.fulford@coag.gov
*Attorneys for Plaintiff State of Colorado*

**KATHLEEN JENNINGS**
*Attorney General*
*State of Delaware*

*/s/ Christian Douglas Wright*
CHRISTIAN DOUGLAS WRIGHT
Director of Impact Litigation
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
(302) 577-8600
christian.wright@delaware.gov
*Attorney for Plaintiff State of Delaware*

**KARL A. RACINE**
*Attorney General*
*District of Columbia*

*/s/ Kathleen Konopka*
KATHLEEN KONOPKA (D.C. Bar No. 495257)
Deputy Attorney General, Public Advocacy Division
MICHELLE THOMAS (D.C. Bar No. 993514)
Chief, Civil Rights Section, Public Interest Division
BRENDAN DOWNES (D.C. Bar No. 187888)
NICOLE HILL (D.C. Bar No. 888324938)
SAMANTHA HALL[*]
KATE VLACH (D.C. Bar No. 1671390)

Assistant Attorneys General
Office of the Attorney General for the District
of Columbia
441 4th St., N.W.
Suite 630S
Washington, DC 20001
(202) 724-6610
Kathleen.Konopka@dc.gov
*Practicing in the District of Columbia under
the direct supervision of Michelle D. Thomas,
a member of the D.C. Bar. See D.C. Court of
Appeals Rule 49(c).
Attorneys for Plaintiff District of Columbia*

**KWAME RAOUL**
*Attorney General*
*State of Illinois*

/s/ *Alison V. Hill*

ALISON V. HILL
LIZA ROBERSON-YOUNG
GRETCHEN HELFRICH
Assistant Attorneys General
Office of the Attorney General State of Illinois
100 W. Randolph St.
Chicago, IL, 60601
(312) 814-3954
ahill@atg.state.il.us
*Attorneys for Plaintiff State of Illinois*

**DANA NESSEL**
*Attorney General*
*State of Michigan*

/s/ *Fadwa A. Hammoud*

FADWA A. HAMMOUD
Solicitor General
TONI L. HARRIS
NEIL GIOVANATTI
Assistant Attorneys General
Michigan Department of Attorney General
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
HammoudF1@michigan.gov

**MAURA HEALEY**
*Attorney General*
*Commonwealth of Massachusetts*

/s/ *Angela R. Brooks*

ANGELA R. BROOKS
ABIGAIL B. TAYLOR
ABRISHAM ESHGHI
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2590
angela.brooks@mass.gov
*Attorneys for Plaintiff Commonwealth of
Massachusetts*

**KEITH ELLISON**
*Attorney General*
*State of Minnesota*

/s/ *Kevin Finnerty*

KEVIN FINNERTY
KATHRYN WOODRUFF
Assistant Attorneys General
445 Minnesota Street, Suite 1400
St. Paul, MN 55101-2131
(651) 757-1058 (Voice)
(651) 757-1361 (Voice)
kevin.finnerty@ag.state.mn.us
kathryn.woodruff@ag.state.mn.us
*Attorneys for Plaintiff State of Minnesota*

Harrist19@michigan.gov
GiovanattiN@michigan.gov
*Attorneys for Plaintiff State of Michigan*

**HECTOR BALDERAS**
*Attorney General*
*State of New Mexico*

/s/ *Tania Maestas*
TANIA MAESTAS
Chief Deputy Attorney General
PO Drawer 1508
Santa Fe, NM 87504-1508
(505) 490-4060
tmaestas@nmag.gov
*Attorney for Plaintiff State of New Mexico*

**JOSHUA H. STEIN**
*Attorney General*
*State of North Carolina*

/s/ Sripriya Narasimhan
SRIPRIYA NARASIMHAN (D.C. Bar No:
1029549)
Deputy General Counsel
North Carolina Department of Justice
114 W. Edenton Street
Raleigh, NC 27603
(919) 716-6400
SNarasimhan@ncdoj.gov
*Attorney for Plaintiff State of North Carolina*

**ELLEN F. ROSENBLUM**
*Attorney General*
*State of Oregon*

/s/ *Elleanor H. Chin*
ELLEANOR H. CHIN
BRIAN S. MARSHALL (D.C. Bar No.
501670)
Senior Assistant Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700
elleanor.chin@doj.state.or.us
*Attorney for Plaintiff State of Oregon*

**PETER F. NERONHA**
*Attorney General*
*State of Rhode Island*

/s/ *Shannon L. Haibon*
SHANNON L. HAIBON
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400 Ext. 2018
shaibon@riag.ri.gov
*Attorney for Plaintiff State of Rhode Island*

**THOMAS J. DONOVAN, JR.**
*Attorney General*
*State of Vermont*
JOSHUA R. DIAMOND
Deputy Attorney General

/s/ *Rachel E. Smith*
RACHEL E. SMITH
JULIO A. THOMPSON

**MARK R. HERRING**
*Attorney General*
*Commonwealth of Virginia*

/s/ *Jessica Merry Samuels*
JESSICA MERRY SAMUELS (D.C. Bar No.
1552258)
Assistant Solicitor General
Office of the Attorney General

Assistant Attorneys General
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
(802) 828-3171
rachel.e.smith@vermont.gov
julio.thompson@vermont.gov
*Attorneys for Plaintiff State of Vermont*

202 North Ninth Street
Richmond, VA 23219
(804) 786-6835
solicitorgeneral@oag.state.va.us
*Attorney for Plaintiff Commonwealth of Virginia*

**ROBERT W. FERGUSON**
*Attorney General*
*State of Washington*

*/s/ Kristin Beneski*
KRISTIN BENESKI
Assistant Attorney General
AILEEN HUANG
Deputy Attorney General
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
kristin.beneski@atg.wa.gov
aileen.huang@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

**JOSHUA L. KAUL**
*Attorney General*
*State of Wisconsin*

*/s/ Jeffery A. Simcox*
ANNE M. BENSKY
Assistant Attorney General
JEFFERY A. SIMCOX
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 264-9451 (Bensky)
(608) 266-3861 (Simcox)
benskyam@doj.state.wi.us
simcoxja@doj.state.wi.us
*Attorneys for Plaintiff State of Wisconsin*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2020, I electronically filed the foregoing Plaintiffs'

Opposition to Motion to Intervene with the Clerk of the Court by using the CM/ECF system.

Notice of this filing will be sent via email to all parties by operation of the Court's electronic

filing system. Parties may access this filing through the Court's CM/ECF System.


_/s/ Marie Soueid_____
Marie Soueid