## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COMMONWEALTH OF PENNSYLVANIA, et al.,

*Plaintiffs*,

v.

No. 1:20-cv-1468-CJN

Elisabeth D. DEVOS, in her official capacity as Secretary of the United States Department of Education, et al.,

*Defendants*,

FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION, INDEPENDENT WOMEN'S LAW CENTER, SPEECH FIRST, INC.,

[*Proposed*] *Intervenor-Defendants*.

### REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

The parties' responses to the motion to intervene are most notable for what they *do not* say. Although Plaintiffs contest every other requirement for intervention, they never argue that Defendants "adequately represent" Movants. Fed. R. Civ. P. 24(a)(2). And Defendants "take no position" on intervention as of right, Doc. 48—a "deafening" "silence on any intent to defend the intervenors' special interests." *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1256 (10th Cir. 2001) (cleaned up). The parties have thus confirmed what Movants predicted in their initial motion: Absent Movants' intervention, their unique "perspective on the First and Fourteenth Amendments" will "not be represented" in this litigation. Mot. (Doc. 27) 2.

But Movants' perspective is crucial because it affects the answer to every key question before the Court. If the Final Rule's free speech and due process protections are constitutionally *required*, then Plaintiffs lack standing to challenge them, Plaintiffs' APA challenges lack merit at *Chevron* Steps One and Two, and the equities tip decidedly against a preliminary injunction. Plaintiffs disagree with Movants' constitutional arguments, as their opposition makes clear. But

that is a debate to be had on the merits—not a reason to bar Movants from intervening in the first place.

This all makes an easy case for permissive intervention. Plaintiffs' primary objection to Movants' intervention—Article III standing—is no obstacle under Rule 24(b). And Plaintiffs never dispute that Movants bring a wealth of expertise on the issues in this case, offer a constitutional perspective that the parties will not, and will be the *only* voice for the college students who will lose vital protections if the Rule is vacated. Defendants consent to permissive intervention, moreover, and Plaintiffs offer no real argument why Movants' participation will cause any delay or prejudice—let alone *undue* delay or prejudice. Movants have worked diligently not to slow down this case whatsoever (indeed, Movants are the ones who asked for expedited consideration of this motion). And Movants pledge to focus their briefs on their own unique defenses and not duplicate Defendants' arguments. If Plaintiffs can intervene to defend an agency rule on broader grounds than the agency—as many of them told the D.C. Circuit five weeks ago— then Movants can intervene here. *See Competitive Enterprise Inst. v. NHTSA*, Doc. #1844912, No. 20-1145 (D.C. Cir. May 29, 2020).

Movants also qualify for intervention as of right. Plaintiffs argue that Movants have no standing to intervene because the Final Rule does not really *require* universities to reform their speech-restrictive harassment policies or their process-free disciplinary hearings. *See* Opp. (Doc. 49) 12, 16. But that assertion contradicts Plaintiffs' complaint, which repeatedly discusses the Rule's "requirements" and insists that it will have real-world consequences for sexual misconduct on campus. Those "allegations in the [c]omplaint are assumed to be true" "[f]or purposes of resolving [this] motion[] to intervene." *W. Org. of Res. Councils v. Jewell*, No. 14-cv-1993-RBW, 2015 WL 13711094, at *1 (D.D.C. July 15, 2015). And if they are not true, then it means Plaintiffs

lack standing to challenge the protections that Movants want to defend. Movants are entitled to intervene and have that debate with Plaintiffs.

For all these reasons, the Court should allow Movants to intervene and participate as defendants in this important case.

## I.      Movants' constitutional arguments are directly relevant to issues already before the Court.

Plaintiffs accuse Movants of improperly seeking to inject new *claims* into the case, but in fact Movants seek only to introduce *arguments* that no one else will make on issues that are already before the Court. Although Plaintiffs elide this distinction, it is critical; those with a concrete interest in a case who seek to make new arguments on issues the Court must decide are archetypal intervenors under Rule 24. *See Me-Wuk Indian Cmty. v. Kempthorne*, 246 F.R.D. 315, 321 (D.D.C. 2007) ("Although [movant] may employ different theories and set forth different arguments than plaintiff, the central interest at issue remains constant.").

Equivocation between new claims and new arguments is the foundation for Plaintiffs' entire opposition; they do not suggest that the Department adequately represents Movants' interests but instead contend that the constitutional questions Movants seek to raise ought to be ignored. But the Court cannot blind itself to Movants' constitutional arguments, which speak directly to issues Plaintiffs have already put before the Court. Consider, for example, the implications for Plaintiffs' preliminary-injunction motion.

**Standing.** Plaintiffs do not have standing to complain that the Final Rule forces them to do things that the Constitution requires them to do anyway. Thus, if Movants are correct that the Final Rule's definition of sexual harassment and many of its procedural protections simply enforce the requirements of the First Amendment and the Due Process Clause, Plaintiffs do not have standing to challenge these key aspects of the Final Rule.

A long line of cases shows that, if Movants' constitutional claims have merit, then many of Plaintiffs' claims must be dismissed for lack of redressability. In *Black v. LaHood*, 882 F. Supp. 2d 98, 106 (D.D.C. 2012), for example, this Court dismissed a challenge to a federal trail project that permanently closed a road to automobile traffic. The plaintiffs' injuries from the federal project were not redressable, this Court explained, because a separate D.C. Council ordinance also prohibited drivers from using the road. *Id.* Many other cases reach similar results. *See, e.g.*, *White v. United States*, 601 F.3d 545, 552 (6th Cir. 2010) (economic injuries caused by federal prohibition on cockfighting not redressable because cockfighting is also illegal under state law); *Fla. Family Policy Council v. Freeman*, 561 F.3d 1246, 1256–58 (11th Cir. 2009) (injuries caused by canon of judicial conduct requiring disqualification were not redressable because unchallenged state statute also required disqualification); *Covenant Media of S.C., LLC v. City of North Charleston*, 493 F.3d 421, 430 (4th Cir. 2007) (billboard company lacked redressable injury from local ordinance challenged under the First Amendment because it could not place sign at desired location under separate, unchallenged ordinance). As Judge Easterbrook has explained for the Seventh Circuit, a plaintiff cannot establish redressability where "winning the case will not alter [the] situation." *Harp Advertising Ill., Inc. v. Village of Chi. Ridge*, 9 F.3d 1290, 1292 (7th Cir. 1993).

If this Court allows Movants to intervene, they will argue that the First Amendment and the Due Process Clause place significant constraints on whether and how Plaintiffs may lawfully punish students on college campuses. An order from this Court vacating the Final Rule or suspending its enforcement would not relieve Plaintiffs from those constitutional obligations, which all public colleges and universities must follow. Plaintiffs' alleged injuries could not be redressed.

4

**Likelihood of Success on the Merits.** One of the centerpieces of Plaintiffs' lawsuit is their claim that key aspects of the Final Rule are inconsistent with Title IX and therefore "contrary to law" under the APA. *See* Compl. ¶¶ 235–54. To assess this claim, the Court will apply *Chevron*'s two-step framework. At Step One, the Court will "examine the statute *de novo*" to decide if the intent of Congress is clear. *Nat'l Ass'n of Clean Air Agencies v. EPA*, 489 F.3d 1221, 1228 (D.C. Cir. 2007). In undertaking this inquiry, the Court will not be limited to the statutory interpretation arguments offered by the agency in its Final Rule but instead must deploy "the ordinary tools of statutory construction," *City of Arlington v. FCC*, 569 U.S. 290, 296 (2013), including the canon of constitutional avoidance. If Movants are correct that Plaintiffs' construction of Title IX would cause this important statute to run afoul of the First Amendment and the Due Process Clause, that is a powerful reason for this Court to reject Plaintiffs' interpretation. *See, e.g.*, *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172–72 (2001) (applying canon of constitutional avoidance at *Chevron* Step One); *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 574–75 (1988) (same).

Plaintiffs try to sidestep this issue by emphasizing that the Department does not agree with Movants' constitutional arguments; they invoke the *Chenery* doctrine, which limits courts to the explanation given by the agency. But at an absolute minimum, Movants' constitutional arguments provide a compelling reason to conclude at *Chevron* Step One that the statute does not unambiguously mean what Plaintiffs say. *See Bank of America, N.A. v. FDIC*, 244 F.3d 1309, 1319–20 (11th Cir. 2001) (collecting and following cases from the Fourth, Eighth, and Ninth Circuits holding that *Chenery* does not apply at *Chevron* Step One). Movants' constitutional arguments also provide important context for assessing the reasonableness of the Department's interpretation of the statute at *Chevron* Step Two. Although the Department did not embrace

Movants' constitutional arguments, it gave weight to free speech and due process considerations when promulgating the Final Rule. And it was right to do so if Plaintiffs' constitutional arguments have merit.

**Irreparable Injury.** For much the same reason that Movants' constitutional arguments show that Plaintiffs' injuries are not redressable, they also establish that Plaintiffs will not sustain any irreparable injury if the Final Rule goes into effect as scheduled on August 14. As a matter of law, Plaintiffs cannot sustain an irreparable injury from federal regulations that do no more than require them to comply with the Constitution. Although courts often ask whether a plaintiff will sustain irreparable injury "without" injunctive relief, it is "more accurate to phrase the question . . . as whether the plaintiff will suffer irreparable harm 'but for' the issuance of an injunction." *Sierra Club v. U.S. Dep't of Energy*, 825 F. Supp. 2d 142, 153 (D.D.C. 2011) (citing *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999)). The inquiry is "whether the plaintiff has shown that the relief sought will actually prevent irreparable harm," *id.*, and Plaintiffs would not avoid any irreparable injury by being relieved of obligations under the Final Rule that overlap with their obligations under the Constitution.

**Balance of Hardships and the Public Interest.** Whether and when the Final Rule goes into effect is obviously important to the university administrators who signed the declarations in Plaintiffs' voluminous preliminary-injunction appendix. But the Final Rule is even more important to the students whose constitutional rights the rule protects. "The public interest favors the protection of constitutional rights." *Archdiocese of Wash. v. WMATA*, 897 F.3d 314, 482 (D.C. Cir. 2018). If the Court is persuaded by Movants' constitutional arguments, it will have a strong reason to deny a preliminary injunction. For this reason as well, Movants' constitutional arguments are directly relevant to the issues already before the Court. They ought to be heard.

\*      \*      \*

Far from the sort of collateral claims that intervenors are sometimes prohibited from raising, Movants' constitutional arguments bear directly on every major issue this Court will need to decide. To varying degrees, all the existing parties disagree with these arguments, and Movants should be permitted to intervene so that someone can make them. On a motion to intervene, after all, "[t]he question before [the Court] is not the merits of" Movants' constitutional arguments or the *Chenery* doctrine, "but whether [Movants] should [be] allowed to intervene in order to adequately present their [side]." *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 43–44 (1st Cir. 1992); *accord Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*, 840 F.2d 72, 75 (D.C. Cir. 1988) (explaining that intervention motions do not turn on "whether the applicant is likely to prevail on the merits"); *Kozak v. Wells*, 278 F.2d 104, 109 (8th Cir. 1960) ("For purposes of judging the satisfaction of [intervention criteria] we look to . . . the motion for leave to intervene and to the proposed complaint or defense in intervention, and, absent sham and frivolity, we accept the allegations in those pleadings as true.").

## II.      The Court should grant Movants permissive intervention.

Granting permissive intervention is the simplest way to resolve this motion. Permissive intervention is entirely discretionary. *See SEC v. Goldstone*, No. 12-cv-0257, 2013 WL 6920854, at \*24 (D.N.M. Dec. 13, 2013) ("'The district court possesses broad discretion in determining whether to grant permissive intervention and will rarely be reversed on appeal.'" (quoting *Moore's Federal Practice*)). When exercising its "'very broad discretion,'" this Court can grant permissive intervention based on "'almost any factor rationally relevant.'" *McIntire v. Mariano*, No. 18-cv-60075, 2019 WL 78982, at \*7 (S.D. Fla. Jan. 2, 2019) (quoting *Daggett v. Comm'n on Govtl. Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999)). The only factors that Rule 24(b)

requires this Court to consider are timeliness, the presence of a common question of law or fact, and undue delay or prejudice. *See* Fed. R. Civ. P. 24(b).

Those factors strongly favor intervention. Plaintiffs do not dispute timeliness. *Cf. Alabama v. U.S. Dep't of Commerce*, No. 2:18-cv-772, 2019 WL 4260171, at *2 (N.D. Ala. Sept. 9, 2019) (granting a later-filed motion to intervene by many of these same Plaintiffs because "the court [had] yet to take significant action" in the case). And Plaintiffs' attempt to argue that Movants' defenses "do[] not share common questions of law" with the main action, Opp. 15, is confused. Movants share *every* question of law and fact with the main action because, like Defendants, they seek to defend the Final Rule. *See* Mot. 15-16; Proposed Answer (Doc. 27-1) 18. While Movants raise additional constitutional defenses that Defendants will not, those additional defenses do not defeat permissive intervention. Rule 24(b) requires movants to identify "*a* common question," singular, Fed. R. Civ. P. 24(b)(1)(B) (emphasis added)—not to raise exactly the same questions as an existing party.

Plaintiffs' attempts to argue undue delay and prejudice, Opp. 16-17, are also unpersuasive. Plaintiffs do not contend that Movants' intervention will *actually* slow down this case. They cannot: Movants sought to intervene three weeks after this case was filed, asked the Court to *expedite* briefing on this motion, agreed to intervene and litigate as one unit, and promised to follow the same deadlines that govern Defendants—including the July 8 deadline for oppositions to Plaintiffs' preliminary-injunction motion. *See* Mot. 15-16; Doc. 28; 6/30/20 Minute Order. While Plaintiffs fret that Movants' intervention will cause "unnecessary distraction," Opp. 16, vague concerns about the mere presence of additional parties are not the kind of "*undue* delay or prejudice" that Rule 24(b) forbids. *See* Mot. 16. Plaintiffs' perceived "'need for expeditious resolution of the case'" is no basis to deny permissive intervention, since this case is "in its

infancy" and the Court can resolve all oppositions to the preliminary-injunction motion "in the same opinion." *League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 577–79 (6th Cir. 2018). To make things even simpler, Movants promise to focus their briefs and arguments on their own unique defenses and will incorporate the Department's arguments by reference wherever possible.

Instead of explaining how Movants' *party status* will cause undue delay or prejudice, Plaintiffs contend that Movants' *arguments* will harm them by potentially invalidating their speech codes. Opp. 16-17. Yet, contrary to Plaintiffs' confusing terminology, Movants do not "seek to raise" any "claim" against Plaintiffs—under the First Amendment or otherwise. Opp. 15. They seek to raise constitutional arguments that prove why the Final Rule should be upheld and why Plaintiffs are not entitled to relief. *See supra* I. Those constitutional arguments, if this Court accepts them or if they help sustain the Final Rule, might cause Plaintiffs to fix their speech codes. But that is a *good* thing: Plaintiffs must comply with the Constitution anyway; if Movants' intervention encourages them to come into compliance, then overall judicial resources will be conserved by decreasing Movants' need to bring their own challenges to Plaintiffs' speech codes. Mot. 16-17; *accord Textile Workers Union of Am., CIO v. Allendale Co.*, 226 F.2d 765, 769-70 (D.C. Cir. 1955) (en banc) (reversing a denial of permissive intervention for similar reasons).

In any event, parties suffer no "prejudice" when intervenors want "to make additional and different legal arguments to the Court based upon evidence already admitted in a completed record," since the parties "will have a full opportunity, in their . . . brief, to counter any such legal arguments." *United States v. Philip Morris USA Inc.*, No. 99-cv-2496-GK, 2005 WL 1830815, at *5 (D.D.C. July 22, 2005). As Plaintiffs convinced the court when they permissively intervened to defend the Affordable Care Act, "full and adequate briefing on all sides of this case will not cause

prejudice," especially where "[t]he Court will hold the Proposed Intervenor[s] to the same briefing schedule as the original parties." *Texas v. United States*, No. 4:18-cv-167, 2018 WL 10562846, at *3 (N.D. Tex. May 16, 2018). And because Plaintiffs' consent to Movants' participation as amici in this case, *see* Opp. 16, "Plaintiffs cannot claim an appreciable burden from having to respond to Proposed Intervenors' legal arguments, whose submissions as *amicus curiae* the Court otherwise undoubtedly would have received." *335-7 LLC v. City of New York*, No. 20-cv-1053, 2020 WL 3100085, at *4 (S.D.N.Y. June 11, 2020).

After failing to show any downsides to Movants' intervention, Plaintiffs offer no response to the many upsides. They do not contest that Movants' intervention "will meaningfully assist the Court" because Movants are "thought leaders and repeat players in this field" with "a wealth of experience and expertise to bear on the historical, factual, and legal questions in this case." Mot. 17. And Plaintiffs do not contest that, without Movants' intervention, the "important perspectives of "the college students who 'directly' benefit from the Rule's protections for free speech and due process" "will be missing" from this case. Mot. 17. In fact, by failing to contest adequacy of representation, Plaintiffs *concede* that Movants' unique perspective and arguments will not be litigated by the existing parties. Defendants also agree that the benefits of Movants' intervention outweigh any costs, since they "consent to permissive intervention." Doc. 48.

Finally, it "'remains an open question in this circuit whether Article III standing is required for permissive intervention.'" *United States v. Facebook, Inc.*, No. 19-cv-2184-TJK, 2020 WL 1978802, at *1 n.2 (D.D.C. Apr. 23, 2020) (cleaned up; quoting *In re Endangered Species Act Section 4 Deadline Litig.*, 704 F.3d 972, 980 (D.C. Cir. 2013)). This Court can grant Movants' intervention without answering that question because (1) Movants have standing and (2) Movants' standing is intertwined with Plaintiffs' standing and, thus, should be litigated after intervention.

*See infra* III.A. If the Court decides to answer the question, though, it should hold that Movants do not need standing to permissively intervene here. Rule 24(b) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *SEC v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459 (1940). And Movants' permissive intervention cannot possibly implicate Article III: They seek to intervene as defendants, at the district-court level, in an existing case or controversy within this Court's jurisdiction, on the same side as a party with standing, raising no new affirmative claims for relief. No "independent standing by an intervenor" is necessary in these circumstances. *King v. Christie*, 981 F. Supp. 2d 296, 308-09 (D.N.J. 2013), *aff'd*, 767 F.3d 216 (3d Cir. 2014); *accord* 25 Fed. Proc., L. Ed. § 59:372 (collecting cases).

## III. Alternatively, Movants are entitled to intervention as of right.

The requirements for intervention as of right—"'timeliness, interest, impairment of interest, and adequacy of representation,'" as well as Article III standing—are also satisfied here. *100Reporters LLC v. DOJ*, 307 F.R.D. 269, 274 (D.D.C. 2014). Plaintiffs "do[] not dispute" inadequacy, so that requirement is "concede[d]." *Cook v. Boorstin*, 763 F.2d 1462, 1466-67 (D.C. Cir. 1985); *see Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 14 (D.D.C. 2010). While Plaintiffs challenge standing and the other factors in Rule 24(a)(2), their arguments are unpersuasive.

### A. Movants have Article III standing.

The Supreme Court has made plain that a "concrete and demonstrable injury to [an] organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests" and thus suffices for standing. *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379 (1982). Movants provide services to students accused of sexual harassment who are in university misconduct proceedings. If the Final Rule is allowed to go into effect, there will be fewer such proceedings, and those that take

place under Title IX will involve much more robust protections for the accused. The Final Rule will allow Movants to devote fewer resources to assisting accused students in these proceedings, enabling them to reallocate funds and staff time to other aspects of their missions. That is enough to establish that, if Plaintiffs prevail in this lawsuit, Movants will sustain a "concrete and demonstrable injury" under *Havens Realty* and its progeny.

Plaintiffs argue that Movants' organizational injuries are too speculative because the Final Rule "permits schools to continue adjudicating 'non-Title IX' sexual harassment . . . using separate code of conduct proceedings." Opp. 7. But Plaintiffs themselves allege that "fewer incidents of sexual harassment will be investigated under the Rule," Compl. ¶ 177, and that many of Plaintiffs' alleged injuries flow directly from that prediction, *see* PI Br. (Doc. 22-2) 44 (discussing costs Plaintiffs will incur under Final Rule because fewer victims of sexual misconduct will be "willing to report and/or move forward with complaints"). Plaintiffs' pleadings are evidence this Court may consider and accept as true when deciding whether Movants have standing. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 734 (D.C. Cir. 2003). The pleadings and evidence filed by Plaintiffs leave no doubt that implementation of the Final Rule will reduce the number of sexual harassment cases that Plaintiffs prosecute, thus reducing the number of accused students who Movants must defend.

Moreover, it is certain that the Final Rule will guarantee that many students accused of sexual misconduct will enjoy new, robust procedural protections—protections that would make Movants' involvement in many of these cases unnecessary. Plaintiffs emphasize that the Final Rule does not require them to follow any particular procedures in cases involving what they call "'non-Title IX' sexual harassment," but that is beside the point. At least when students are accused of misconduct that fits within the Final Rule's definition of "sexual harassment," they will enjoy

basic due process rights such as notice of the charges, adjudication by a neutral decisionmaker, and cross-examination. To the extent that these procedures are afforded to accused students as a result of implementation of the Final Rule, Movants will be able to reallocate resources currently devoted to helping accused students defend themselves in proceedings that lack the basic fundaments of due process.

Plaintiffs imply that any injuries depending on the future conduct of a third party are too speculative to qualify as an injury-in-fact under Article III, but a raft of Supreme Court and D.C. Circuit precedent says otherwise. "It is impossible to maintain," according to then-Judge Scalia, "that there is no standing to sue regarding action of a defendant which harms the plaintiff only through the reaction of third persons." *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (Scalia, J.); *accord Bennett v. Spear*, 520 U.S. 154, 169 (1997); *Competitive Enter. Inst. v. NHTSA*, 901 F.2d 107, 113-14 (D.C. Cir. 1990); *Nat'l Wildlife Fed'n v. Hodel*, 839 F.2d 694, 705 (D.C. Cir. 1988); *Comm. for Full Employment v. Blumenthal*, 606 F.2d 1062, 1066 (D.C. Cir. 1979). As the Supreme Court explained last term, a litigant has standing where an injury is caused by "the predictable effect of Government action on the decisions of third parties." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019).

Plaintiffs also attempt to shoehorn Movants' organizational injuries into the rule that expenses incurred from litigation and generalized advocacy do not qualify as an organizational injury-in-fact. *See Center for Responsible Science v. Gottlieb*, 346 F. Supp. 3d 29, 37–38 (D.D.C. 2018); *Cigar Association of America v. U.S. Food & Drug Admin.*, 323 F.R.D. 54, 62–63 (D.D.C. 2017). But Movants do not base their organizational standing on the expenses they have incurred in moving to participate in this lawsuit. Instead, Movants' claim is that if Plaintiffs' suit is successful, Movants will be forced to devote resources to assisting and  for students and faculty

who are accused under vague and subjective sexual harassment policies without basic procedural protections. These resources would otherwise be used to further other aspects of Movants' missions, and that diversion of resources is an Article III injury-in-fact under Supreme Court and D.C. Circuit precedent. *See Havens Realty*, 455 U.S. at 379; *People for the Ethical Treatment of Animals v. U.S. Dep't of Agriculture*, 797 F.3d 1087, 1093 (D.C. Cir. 2015).

Wholly apart from their claims to organizational standing, Movants have associational standing to sue on behalf of their members. *See Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333 (1977). By adopting the *Davis* standard, the Final Rule's definition of "sexual harassment" will impede enforcement of draconian speech codes that currently chill the free speech of college students. As Movants know from their extensive litigation experience in this area, universities routinely used the guidance that the Final Rule replaced "as a justification for violating the First Amendment." Lukianoff & Goldstein, *Speech Codes and "Twisting Title IX"*, Volokh Conspiracy (Sept. 13, 2018), bit.ly/3dXmM5E. By requiring universities to adopt a speech-protective definition of "sexual harassment," and by removing the threat of government enforcement actions against universities who adopt that definition, the Final Rule will eliminate the most common justification for illegal speech codes.

Further, as Movants' motion explained, a member of the FIRE Student Network is currently in proceedings for alleged sexual misconduct at a public university that affords accused students fewer procedural protections than are required under the Final Rule. It cannot be seriously doubted that this student has a concrete and particularized interest in the outcome of his case, or that he would sustain an Article III injury-in-fact if he could not use the Final Rule's additional procedural protections. *See Jeffries v. Volume Services Am., Inc.*, 928 F.3d 1059, 1063–64 (D.C. Cir. 2019). And contrary to Plaintiffs' suggestion, Movants have no obligation to reveal his identity

or the identities of any of their members in a motion to intervene—thus removing their anonymity and exposing them to potential retaliation. *See Doe v. Stincer*, 175 F.3d 879, 884 (11th Cir. 1999); *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 593 n.48 (S.D.N.Y. 2019), *aff'd in relevant part*, 139 S. Ct. 2551 (2019).

Plaintiffs suggest that the FIRE Student Network member does not have standing because any injury he might sustain will be mediated through a third party—the public university he attends, which might refuse to provide the additional protections even if this Court allows the Final Rule to go into effect. But an injury is redressable for Article III purposes if a favorable decision would create "a significant increase in the likelihood that the [litigant] would obtain relief that directly redresses the injury suffered." *Utah v. Evans*, 536 U.S. 452, 464 (2002). That rule applies with special force when someone challenges "government action that permits or authorizes third-party conduct that would otherwise be illegal in the absence of the Government's action." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 940 (D.C. Cir. 2004). Plaintiffs have asked this Court to enter a nationwide injunction that would relieve every public university in the United States of its legal obligation to supply the Final Rule's protections. Even if there is some remote possibility that the public university attended by the student in question would violate the Final Rule after it goes into effect, that possibility does not come close to defeating this student's standing. *See Conservation Law Found.*, 966 F.2d at 43 ("[An intervenor's] interests are not speculative simply because the [challenged law] merely begin[s] the process through which they would come about.").

Plaintiffs also say that the student in question does not have standing because the Final Rule does not apply retroactively. *See* 85 Fed. Reg. at 30,061. But the Final Rule is silent as to its application to *pending* cases, and the ordinary practice is to apply new evidentiary and procedural

rules to pending cases "except to the extent that application of the rules would not be feasible or would work injustice." 21 Fed. Prac. & Proc. Evid. § 5014 (2d ed.); *see Landgraf v. USI Film Prods.*, 511 U.S. 244, 275 (1994) ("Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity."). The only case Plaintiffs cite to the contrary, *Greene v. United States*, 376 U.S. 149, 160 (1964), did not concern application of new rules of procedure to pending cases and is therefore inapposite.

One final point on standing. Plaintiffs' main argument seems to be that, even if the Final Rule is vacated, universities could still enact illegal sexual-harassment codes and conduct illegal sexual-misconduct hearings. But Plaintiffs said the opposite in their complaint, which this Court accepts as true for purposes of this motion. *See, e.g.*, Compl. ¶¶ 2-6, 84, 107, 109, 120-25, 212. And the effect of the Rule is a merits issue—one that Movants should be allowed to litigate as a party. For example, if Plaintiffs are right and the Rule does not meaningfully constrain them, then how do Plaintiffs have *standing* to challenge the Rule's protections? In other words, if Movants lack standing, then so do Plaintiffs and Plaintiffs' claims should be dismissed. Because Movants' standing and Plaintiffs' standing are intertwined in this way, this Court need not definitively resolve Movants' standing "in this preliminary posture." *Virginia v. Ferriero*, No. 20-cv-242-RC, 2020 WL 3128948, at *3 (D.D.C. June 12, 2020). The Court should simply "recogniz[e] Movants' interests" and grant intervention without "prejudg[ing] the issue of Plaintiffs' standing and related justiciability questions"; intervention will then "facilitate the efficient presentation of arguments" on standing (and other issues) from all "apparently concerned parties," including Movants. *Id.* (citing *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

### B.    Movants satisfy the other requirements of Rule 24(a)(2).

Plaintiffs' remaining arguments against intervention as of right also fail. Movants concede inadequate representation and do not meaningfully contest timeliness (other than their

unpersuasive argument about undue delay and prejudice, *see supra* II). And, as just explained, *supra* III.A, Movants have important interests at stake in this litigation. *See Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 6 (D.D.C. 2018) ("[G]enerally speaking, when a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and *vice versa*.").

Confusingly, Plaintiffs criticize Movants for "seek[ing] to intervene in several different actions" challenging the Final Rule "in different courts." Opp. 12. Plaintiffs are correct: some or all Movants are intervening in every case that attempts to vacate the Final Rule and to remove its protections for college students. Plaintiffs think this proves that Movants "have no particularized interest at stake in this litigation, but are merely advancing a generalized policy interest," Opp. 12-13, but it actually proves the opposite. Especially in the world of nationwide injunctions, it only takes one court in one jurisdiction to completely defeat Movants' interests; to protect themselves, Movants must intervene in every case. Mere amici with only "a generalized policy interest" in the Final Rule would not spend the resources to litigate as a party in cases across the country; they would file an amicus brief in the leading case.

## CONCLUSION

"[T]he D.C. Circuit has taken a liberal approach to intervention." *Wilderness Soc. v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000); *see Nuesse*, 385 F.2d at 702. Because Plaintiffs provide no reason to deviate from that approach, this Court should grant Movants' motion to intervene and allow them to participate as defendants in this case.

Dated: July 3, 2020                              Respectfully submitted,

 /s/  Charles J. Cooper                            /s/ William S. Consovoy
Charles J. Cooper (D.C. Bar #248070)     William S. Consovoy (D.C. Bar #493423)
Brian W. Barnes (pro hac vice forthcoming)   Cameron T. Norris
Nicole J. Moss (D.C. Bar #472424)        Alexa R. Baltes
COOPER & KIRK, PLLC                      CONSOVOY MCCARTHY PLLC
1523 New Hampshire Ave., NW              1600 Wilson Blvd., Ste. 700
Washington, D.C. 20036                   Arlington, VA 22209
(202) 220-9600                           (703) 243-9423
ccooper@cooperkirk.com                   will@consovoymccarthy.com
bbarnes@cooperkirk.com                   cam@consovoymccarthy.com
nmoss@cooperkirk.com                     lexi@consovoymccarthy.com

*Counsel for Foundation for*              *Counsel for Speech First, Inc. and*
*Individual Rights in Education*          *Independent Women's Law Center*

18