**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, *et al.*, | |
| Plaintiffs, | |
| v. | |
| ELISABETH D. DEVOS, *in her official capacity as Secretary of Education*, *et al.*, | Civil Action No. 20-cv-01468-CJN |
| Defendants, | |
| and | |
| FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION, *et al.*, | |
| Intervenor-Defendants. | |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF**
**THEIR MOTION FOR PRELIMINARY INJUNCTION OR**
**5 U.S.C. § 705 STAY PENDING JUDICIAL REVIEW**

Plaintiff States respectfully submit this supplemental memorandum to address two questions raised by the Court: "(1) whether the Department of Education has the authority to make Plaintiffs' failure to comply with the Final Rule a violation of Title IX; and (2) whether Plaintiffs properly preserved this argument." Minute Order (July 24, 2020).

The Department of Education's rulemaking authority under Title IX is limited to rules that "effectuate the provisions of section 1681." 20 U.S.C. § 1682. But the Department's Rule sets an administrative enforcement ceiling that not only fails to "effectuate the provisions of section 1681," but falls short of what the plain language of § 1681(a) proscribes. The Department unlawfully limits the States' ability to ensure that no student is being excluded from, denied the benefits of, or subjected to discrimination under an education program or activity. And the Department threatens federal enforcement if the States investigate under Title IX conduct that falls outside of the Rule. In doing so, the Department has "prioritize[d] non-statutory objectives to the exclusion of the statutory purpose." *Gresham v. Azar*, 950 F.3d 93, 104 (D.C. Cir. 2020)

(affirming vacatur of agency action as arbitrary and capricious). As a result, the Rule does not "effectuate" § 1681 and the Department lacks authority to enforce it. 20 U.S.C. § 1682. The States have squarely presented this argument in their complaint and motion for preliminary injunction or stay.

## ARGUMENT

### I. The Department of Education lacks authority to make Plaintiffs' failure to comply with the Final Rule a violation of Title IX.

#### A. Any regulation issued pursuant to Title IX must "effectuate the provisions" of 20 U.S.C. § 1681.

A federal agency "has no power to act[] . . . unless and until Congress confers power upon it." *Merck & Co., Inc. v. HHS*, 962 F.3d 531, 536 (D.C. Cir. 2020) (quoting *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986)); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress."). Even where a statute confers "undoubtedly broad" authority, an agency oversteps when it engages in a rulemaking that "falls beyond any reasonable exercise of the [agency's] statutorily assigned power." *Merck & Co.*, 962 F.3d at 536-37.

Congress enacted Title IX to ensure no person, "on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). With this statute, Congress "sought to accomplish" two complementary objectives: to "provide individual citizens effective protection" against discrimination and other practices that limit or deny the benefits and opportunities of education, and to prevent federal resources from supporting these practices. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1979).

Congress created an administrative scheme to enforce Title IX, set forth in 20 U.S.C. § 1682. *See Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 638-39 (1999). That section grants agencies the authority to issue regulations to "effectuate the provisions of section 1681" and to enforce such regulations by terminating the funding of

recipients that fail to comply with them. Any regulation issued pursuant to § 1682 must "establish requirements" that carry into effect the "nondiscrimination mandate" set forth in § 1681(a). *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280 (1998). As the Supreme Court has recognized, this includes "authority to promulgate and enforce requirements" that "do not purport to represent a definition of discrimination under the statute," but only if such requirements "effectuate [Title IX's] nondiscrimination mandate." *Gebser*, 524 U.S. at 292; *see Bowen*, 488 U.S. at 208.

A recipient that violates regulations issued lawfully by the Department pursuant to § 1682 is in violation of Title IX and risks losing federal funding as a result.[1] Conversely, any rule that does not "effectuate" § 1681 is invalid and unenforceable under Title IX. *See, e.g.*, *Merck & Co.*, 962 F.3d at 536, 541 (vacating rule for exceeding agency authority).

B.     **The Department's Rule fails to effectuate § 1681(a) and is unenforceable.**

The Department's Rule does not "provide individual citizens effective protection" against sexual harassment. *Cannon*, 441 U.S. at 704. Instead, the Rule caps § 1681(a) below the level of conduct proscribed by the statute's plain text and limits schools' ability to address conduct going beyond the Department's narrowed conception of what Title IX prohibits. In doing so, the Department has prioritized non-statutory objectives over Title IX's purpose. *See Gresham*, 950 F.3d at 103. As a result, the Rule does not effectuate § 1681(a) and the Department cannot enforce it.

First, the Rule narrows what constitutes sexual harassment under Title IX, where it must be committed, who can file a formal complaint, and when it must be filed. Rule §§ 106.30(a) (*formal complaint*); 106.30(a) (*sexual harassment*); 106.44(a). The Rule further mandates that schools dismiss (or refuse to accept) any complaint that falls outside of these parameters. Rule § 106.45(b)(3)(i). These provisions establish a ceiling that impermissibly prohibits schools from

---

[1] Such a violation does not necessarily expose the recipient to liability in a private civil action, as the Court recognized in *Gebser*. 524 U.S. at 291-92.

addressing under Title IX the full "scope of the behavior that Title IX proscribes." *Davis*, 526

U.S. at 639; *see* Pls. Mem. 22-32; Pls. Reply 15-24. If a school addresses conduct falling outside

the Rule as "Title IX sexual harassment," the Department threatens to subject it to federal

enforcement action. Rule § 106.45(b)(3)(i); 85 Fed. Reg. at 30,288 ("Consequences for failing to

comply with the final regulations include enforcement action by the Department[.]"); *id.* at

30,289.

      The Department can only enforce requirements that "effectuate the provisions" of § 1681.

Therefore, the Department could only prohibit a school from addressing certain complaints of

sexual harassment under their Title IX procedures if the school's adoption of a sexual harassment

policy broader than the Rule was itself a violation of § 1681(a) or so undermined the goals of

that provision that the Department's prohibition could be said to effectuate the purposes of

§ 1681(a). But here, the Department does not claim that a school's investigation of alleged

sexual harassment itself violates § 1681(a) if the conduct alleged or the status of the complainant

do not meet the heightened standards set by the Rule. Instead, the Department explains that the

provisions are necessary to prevent confusion among recipients. Tr. 50:2-3; 85 Fed. Reg. at

30,289. Preventing confusion among recipients is not the purpose of Title IX: it neither "avoid[s]

the use of federal resources to support discriminatory practices" nor "provide[s] individual

citizens effective protection against those practices." *Cannon*, 441 U.S. at 704.[2] The Department

cannot "prioritize" this "non-statutory objective[] to the exclusion of the statutory purpose."

*Gresham*, 950 F.3d at 104. Accordingly, conditioning federal funds on a requirement that

schools cannot address certain sexual harassment claims under Title IX— a requirement that

plainly has nothing to do with effectuating Title IX's antidiscrimination mandate—exceeds the

Department's authority.

---

[2] This justification also defies logic and the record before the agency during rulemaking because
the creation of a ceiling has only increased confusion among recipients. *See* Pls. Mem. 13, 38,
40-41; Pls. Reply 16-17.

That schools in Plaintiff States may adopt a second sexual harassment policy—a "non-Title IX code of conduct," 85 Fed. Reg. at 30,289—to address conduct not covered by the Rule does not render the Rule's ceiling meaningless or harmless. For one thing, the Rule prohibits schools from pursuing, under their non-Title IX codes of conduct, complaints filed by individuals not "participating or attempting to participate" in the school's education program or activity, even if those individuals left the school as a result of the sexual harassment alleged in their complaints. Rule § 106.30(a) (*formal complaint*). Under the Rule, schools must respond to sexual harassment as defined therein by "following a grievance process that complies with § 106.45 before the imposition of any disciplinary sanctions or other actions that are not supportive measures . . . against a respondent." Rule § 106.44(a). If an individual who is not "participating or attempting to participate in" the school's program or activity attempts to file a complaint alleging conduct that qualifies as sexual harassment under the Rule, the school cannot address it under a separate code of conduct provision. This will cause irreparable harm by prohibiting schools from addressing this entire category of complaints in any way. Additionally, schools cannot simply fold the Rule into their existing codes of conduct or state law requirements. Schools must instead be able to identify which complaints of sexual harassment must go through the Rule's grievance process and which can proceed under a more prompt and equitable process. 85 Fed. Reg. at 30,289. But having two sexual harassment policies will cause irreparable harm by causing confusion, undermining trust, chilling reporting, creating delays, and ultimately weakening effective enforcement of Title IX. Pls. Mem. 40-42, Pls. Reply 16-17. These outcomes also demonstrate how the Rule contravenes rather than effectuates Title IX by failing to "provide individual citizens effective protection against" sexual harassment. *Cannon*, 441 U.S. at 704.

Second, the Department requires every complaint of "Title IX sexual harassment" to go through the Rule's prescriptive, inflexible grievance process. That Title IX necessarily implicates a school's disciplinary procedures does not give the Department authority to dictate or override the disciplinary procedures of every school in the country. *E.g.*, Pls. Mem. 13-15. Instead,

Department regulations governing school disciplinary policies must still effectuate Title IX's mandate to provide "effective protection" against practices such as sexual harassment. *Cannon*, 441 U.S. at 704.

Instead of effectuating § 1681(a), the Rule turns Title IX on its head: a school risks its federal funding if it does not strictly comply with even one of the Department's new grievance requirements, but a school does not risk its funding if it fails to address and remedy Title IX sexual harassment, unless such failure is deliberately indifferent. Pls. Mem. 22; Pls. Reply 14-15. The Department does not claim the Rule's grievance procedures are necessary to prevent violations of Title IX, 85 Fed. Reg. at 30,101 ("[U]nfair imposition of discipline, even in a way that violates constitutional due process, does not necessarily equate to sex discrimination prohibited by Title IX."), nor that any part of the Rule is required by the Due Process Clause, *see, e.g.*, 85 Fed. Reg. at 30,101, 30,330. The Department cannot "prioritize" its own independent conception of due process in a manner that contravenes Title IX's stated purpose to eliminate conduct that limits or denies the opportunities and benefits of education. *See Gresham*, 950 F.3d at 104. Nor can it do so in a manner that impedes the ability of recipients to respond to this conduct. *Id.* As the States and their declarants have explained, the Rule's grievance process will discourage reporting, impede prompt and effective remedies, and create inequitable investigations and hearings. Pls. Mem. 14-21, 37-45. The Rule, therefore, fails to effectuate § 1681 by undermining efforts to ensure that no person, "on the basis of sex, [shall] be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

## II.     The States have squarely presented this argument.

The States have argued throughout their pleadings that the Department lacks authority to issue—and therefore enforce—the Rule because it does not "effectuate" Title IX.

This argument is set out in the States' motion for a preliminary injunction or stay. For instance, in discussing the provisions narrowing Title IX's reach—the definition of sexual harassment, the "program or activity" requirement, the limitation on who can file a formal

complaint, and the mandatory dismissal provision—the States argue that these "restrictions, alone and in combination, are contrary to law, arbitrary and capricious, *and exceed statutory authority*." Pls. Mem. 23 (emphasis added); *see also id.* at 22 (The Rule "limits the reach of Title IX and denies students protection from conduct that was previously unlawful."); *id.* at 29 ("The Department undermines Title IX and exceeds its own authority by proscribing recipient school's ability to act on sexual harassment complaints only at the point where the complaints would rise to the level of liability for monetary damages."). Likewise, the States argue that"[t]he Rule's grievance process exceeds agency authority," and detailed how certain specific aspects of the grievance process were outside the scope of the Department's authority because they do not "effectuate" Title IX. Pls. Mem. 2, 13-22. And the States highlight that the Rule makes a school more at risk of losing its federal funding if it does not strictly comply with the Rule's grievance process than if it responds to sexual harassment in a manner that is just short of clearly unreasonable. Pls. Mem. 22.

The States' complaint similarly argues that numerous aspects of the Rule exceed the Department's authority. In Count II, the States allege that the Department has acted in excess of statutory authority because "the Rule does not 'effectuate' Title IX." Compl. ¶ 245. The complaint cites as specific examples the Rule's mandatory dismissal requirement and the K-12 grievance procedures, but makes clear that these examples are nonexhaustive. *Id.* ("The following provisions, *among others*, do not effectuate Title IX's prohibition of discrimination on the basis of sex.") (emphasis added). And the factual allegations in the complaint make clear that the States are alleging that multiple aspects of the Rule fail to effectuate Title IX—which is the basis for their claim that the Department has exceeded its authority:

> The Department claims that its Rule effectuates Title IX of the Education Amendments Act of 1972 ("Title IX"), but in reality the Rule undercuts Title IX's mandate to eradicate sex discrimination in federally funded education programs and activities. The Rule creates substantive and procedural barriers to schools' investigation and adjudication of sexual harassment complaints, and discourages students and others from making sexual harassment complaints.

Compl. ¶ 3. Elsewhere in the complaint, the States explain that the Rule more broadly contravenes Title IX by imposing harsher consequences for failing to comply with its disciplinary requirements than for failing to respond to sexual harassment at all. Compl. ¶ 91.

Count I also challenges the Department's authority to make noncompliance with the Rule a violation of Title IX. That count alleges that the Rule is "not in accordance with law," and specifically cites the ways in which the Rule narrows the scope of Title IX as well as the Rule's requirement that schools strictly adhere to its grievance procedures. Compl. ¶¶ 235–41. By restricting the scope of Title IX and effectively preventing schools from addressing under their Title IX procedures conduct that falls outside the Rule's narrowed scope, the Department exceeds its authority under Title IX and therefore acted in a manner "not in accordance with law." *See Sullivan v. Zebley*, 493 U.S. 521, 541 (1990) (Regulations that "do not carry out" statutory requirement "exceed[] [the Secretary's] statutory authority").

The States did, as the Court noted, place particular emphasis on the mandatory dismissal requirement, but only because this provision makes it unmistakably clear that any school wishing to protect students from conduct not covered by the Rule must adopt and implement dual sexual harassment policies. The Department itself views this provision as key. It acknowledged concerns that, as originally proposed, the mandatory dismissal requirement "effectively required recipients to make an initial determination as to whether the alleged conduct satisfies the definition of sexual harassment in § 106.30 and whether it occurred within the recipient's education program or activity, and to dismiss complaints based on that initial determination, leaving recipients, complainants, and respondents unclear about whether dismissed allegations could be handled under a recipient's non-Title IX code of conduct." 85 Fed. Reg. at 30,289. The Department responded to these concerns by reemphasizing that dismissal is mandatory— obligating schools to still "make an initial determination" as to whether the complaint falls within the Rule and "dismiss complaints based on that initial determination." *Id.* The Department also added language clarifying that, after dismissal, a school could address behavior that falls outside the Department's narrowed version of Title IX through the "recipient's non-Title IX

codes of conduct." *Id.* In the Department's own view, it is the mandatory dismissal requirement that forces schools to have two separate polices: a policy incorporating the Rule and a "non-Title IX code of conduct." *Cf.* Pls. Mem. 23 (arguing that narrowing provisions "alone and in combination" exceed agency authority and otherwise violate the APA).

In sum, the Department has made clear that noncompliance with the Rule will violate Title IX as interpreted by the Department, and the States have consistently argued that the Rule exceeds the Department's authority. The Department cannot credibly claim that it was not on notice as to the nature of the States' argument. Tr. 45:22-46:8.

## CONCLUSION

Because the Department exceeded its statutory authority under Title IX in issuing the Rule, and because the Rule is unlawful in other ways, the States' motion should be granted.

Dated: July 29, 2020                                    Respectfully submitted,

**GURBIR S. GREWAL**                         **JOSH SHAPIRO**
*Attorney General*                                    *Attorney General*
*State of New Jersey*                               *Commonwealth of Pennsylvania*
MAYUR P. SAXENA                              MICHAEL J. FISCHER
Assistant Attorney General                    Chief Deputy Attorney General

*/s/ Marie Soueid*                                   */s/ Aimee D. Thomson*
MARIE SOUEID                                    AIMEE D. THOMSON (D.C. Bar No. 1045758)
ESTELLE BRONSTEIN                          RYAN B. SMITH
EMILY WANGER                                  JACOB B. BOYER
Deputy Attorneys General                      Deputy Attorneys General
New Jersey Attorney General's Office     Office of Attorney General
Richard J. Hughes Justice Complex        1600 Arch Street, Suite 300
25 Market Street                                     Philadelphia, PA 19103
Trenton, NJ 08625                                 (267) 374-2787
(609) 376-2564                                      athomson@attorneygeneral.gov
Marie.Soueid@law.njoag.gov               *Attorneys for Plaintiff Commonwealth of*
*Attorneys for Plaintiff State of New Jersey*  *Pennsylvania*

**XAVIER BECERRA**
*Attorney General of California*
*State of California*
MICHAEL NEWMAN
Senior Assistant Attorney General
CHRISTINE CHUANG
Supervising Deputy Attorney General

*/s/ Laura Faer*
LAURA FAER
CHRISTINA RIEHL
MARISOL LEÓN
SHUBHRA SHIVPURI
SRIVIDYA PANCHALAM
Deputy Attorneys General
California Attorney General's Office
1515 Clay Street, 20th Floor
Oakland, CA 94612-0552
(510) 879-3305
Laura.Faer@doj.ca.gov
*Attorneys for Plaintiff State of California*

**PHILIP J. WEISER**
*Attorney General*
*State of Colorado*

*/s/ Eric R. Olson*
ERIC R. OLSON
Solicitor General
MARTHA FULFORD (D.C. Bar No. 101194)
First Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
eric.olson@coag.gov
martha.fulford@coag.gov
*Attorneys for Plaintiff State of Colorado*

**KATHLEEN JENNINGS**
*Attorney General*
*State of Delaware*

*/s/ Christian Douglas Wright*

CHRISTIAN DOUGLAS WRIGHT
Director of Impact Litigation
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
(302) 577-8600
christian.wright@delaware.gov
*Attorney for Plaintiff State of Delaware*

**KARL A. RACINE**
*Attorney General*
*District of Columbia*

*/s/ Kathleen Konopka*

KATHLEEN KONOPKA (D.C. Bar No. 495257)
Deputy Attorney General, Public Advocacy Division
MICHELLE THOMAS (D.C. Bar No. 993514)
Chief, Civil Rights Section, Public Interest Division
BRENDAN DOWNES (D.C. Bar No. 187888)
NICOLE HILL (D.C. Bar No. 888324938)
SAMANTHA HALL[*]
KATE VLACH (D.C. Bar No. 1671390)
Assistant Attorneys General
Office of the Attorney General for the District of Columbia
441 4th St., N.W.
Suite 630S
Washington, DC 20001
(202) 724-6610
Kathleen.Konopka@dc.gov
[*] *Practicing in the District of Columbia under the direct supervision of Michelle D. Thomas, a member of the D.C. Bar. See D.C. Court of Appeals Rule 49(c).*
*Attorneys for Plaintiff District of Columbia*

**KWAME RAOUL**
*Attorney General*
*State of Illinois*

/s/ *Alison V. Hill*

ALISON V. HILL
LIZA ROBERSON-YOUNG
GRETCHEN HELFRICH
Assistant Attorneys General
Office of the Attorney General State of
Illinois
100 W. Randolph St.
Chicago, IL, 60601
(312) 814-3954
ahill@atg.state.il.us
*Attorneys for Plaintiff State of Illinois*

**DANA NESSEL**
*Attorney General*
*State of Michigan*

/s/ *Fadwa A. Hammoud*

FADWA A. HAMMOUD
Solicitor General
TONI L. HARRIS
NEIL GIOVANATTI
Assistant Attorneys General
Michigan Department of Attorney General
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
HammoudF1@michigan.gov
Harrist19@michigan.gov
GiovanattiN@michigan.gov
*Attorneys for Plaintiff State of Michigan*

**MAURA HEALEY**
*Attorney General*
*Commonwealth of Massachusetts*

/s/ *Angela R. Brooks*

ANGELA R. BROOKS
ABIGAIL B. TAYLOR
ABRISHAM ESHGHI
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2590
angela.brooks@mass.gov
*Attorneys for Plaintiff Commonwealth of Massachusetts*

**KEITH ELLISON**
*Attorney General*
*State of Minnesota*

/s/ *Kevin Finnerty*

KEVIN FINNERTY
KATHRYN WOODRUFF
Assistant Attorneys General
445 Minnesota Street, Suite 1400
St. Paul, MN 55101-2131
(651) 757-1058 (Voice)
(651) 757-1361 (Voice)
kevin.finnerty@ag.state.mn.us
kathryn.woodruff@ag.state.mn.us
*Attorneys for Plaintiff State of Minnesota*

**HECTOR BALDERAS**
*Attorney General*
*State of New Mexico*

*/s/ Tania Maestas*
TANIA MAESTAS
Chief Deputy Attorney General
PO Drawer 1508
Santa Fe, NM 87504-1508
(505) 490-4060
tmaestas@nmag.gov
*Attorney for Plaintiff State of New Mexico*

**JOSHUA H. STEIN**
*Attorney General*
*State of North Carolina*

*/s/* Sripriya Narasimhan
SRIPRIYA NARASIMHAN (D.C. Bar No: 1029549)
Deputy General Counsel
North Carolina Department of Justice
114 W. Edenton Street
Raleigh, NC 27603
(919) 716-6400
SNarasimhan@ncdoj.gov
*Attorney for Plaintiff State of North Carolina*

**ELLEN F. ROSENBLUM**
*Attorney General*
*State of Oregon*

*/s/ Elleanor H. Chin*
ELLEANOR H. CHIN
BRIAN S. MARSHALL DC Bar No. 501670
Senior Assistant Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700
elleanor.chin@doj.state.or.us
*Attorney for Plaintiff State of Oregon*

**PETER F. NERONHA**
*Attorney General*
*State of Rhode Island*

*/s/ Shannon L. Haibon*
SHANNON L. HAIBON
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400 Ext. 2018
shaibon@riag.ri.gov
*Attorney for Plaintiff State of Rhode Island*

**THOMAS J. DONOVAN, JR.**
*Attorney General*
*State of Vermont*
JOSHUA R. DIAMOND
Deputy Attorney General

*/s/ Rachel E. Smith*
RACHEL E. SMITH
JULIO A. THOMPSON
Assistant Attorneys General
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
(802) 828-3171
rachel.e.smith@vermont.gov
julio.thompson@vermont.gov
*Attorneys for Plaintiff State of Vermont*

**ROBERT W. FERGUSON**
*Attorney General*
*State of Washington*

*/s/ Kristin Beneski*
KRISTIN BENESKI
Assistant Attorney General
AILEEN HUANG
Deputy Attorney General
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
kristin.beneski@atg.wa.gov
aileen.huang@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

**MARK R. HERRING**
*Attorney General*
*Commonwealth of Virginia*

*/s/ Jessica Merry Samuels*
JESSICA MERRY SAMUELS (D.C. Bar No. 1552258)
Assistant Solicitor General
Office of the Attorney General
202 North Ninth Street
Richmond, VA 23219
(804) 786-6835
solicitorgeneral@oag.state.va.us
*Attorney for Plaintiff Commonwealth of Virginia*

**JOSHUA L. KAUL**
*Attorney General*
*State of Wisconsin*

*/s/ Jeffery A. Simcox*
ANNE M. BENSKY
Assistant Attorney General
JEFFERY A. SIMCOX
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 264-9451 (Bensky)
(608) 266-3861 (Simcox)
benskyam@doj.state.wi.us
simcoxja@doj.state.wi.us
*Attorneys for Plaintiff State of Wisconsin*