**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> ELISABETH D. DEVOS, *in her official capacity as Secretary of Education*, *et al*., <br><br> Defendants. | No. 1:20-cv-01468-CJN |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Defendants respectfully submit this supplemental brief in response to the Court's July 24, 2020 order, which asked "(1) whether the Department of Education has the authority to make Plaintiffs' failure to comply with the Final Rule a violation of Title IX; and (2) whether Plaintiffs properly preserved this argument." To uphold the Rule, the Court need not hold that ED has the authority to turn conduct that does not violate Title IX into conduct that does. Rather, the Court need only look to 20 U.S.C. § 1682, which authorizes (1) each Federal department and agency, including ED, that extends federal funds to any education program or activity to issue regulations under Title IX "which shall be consistent with achievement of the objectives of the statute" and (2) to require "[c]ompliance with any requirement adopted pursuant to this section [through] the termination of or refusal to grant or to continue assistance" or "by any other means authorized by law." Because the Rule is consistent with the objectives of Title IX, it falls within the authority explicitly delegated by Congress to ED and its provisions are thus enforceable by ED regardless of whether the conduct covered by those provisions would otherwise violate Title IX. The Court should deny Plaintiffs' motion for a preliminary injunction.

At any rate, Plaintiffs have waived the argument that ED lacks authority to enforce the Rule with respect to ensuring that only conduct within the scope of Title IX is handled pursuant to

Title IX. And to the extent that a particular provision, such as the mandatory dismissal provision of § 106.45(b)(3)(i), is invalid, that provision alone should be severed; there is no reason to vacate the entire Rule.

## I.      ED Has Authority to Enforce Regulations Promulgated Under Title IX, Including, as a Last Resort, Termination of Federal Funding.

As referenced above, Title IX confers broad authority on ED to "effectuate" the provisions of the statute by issuing and enforcing regulations that are consistent with the statutory purpose. 20 U.S.C. § 1682. The statute leaves no doubt that ED can issue rules that extend beyond the terms of the statute to promote its purpose, and the Supreme Court has been equally clear: "Agencies generally have authority to promulgate and enforce requirements that effectuate the statute's nondiscrimination mandate, even if those requirements do not purport to represent a definition of discrimination under the statute." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998). Thus, the Supreme Court commented in *Gebser* that "the Department of Education could enforce . . . administratively" a requirement that a school "promulgate a grievance procedure," even though the failure to do so "does not itself constitute 'discrimination' under Title IX." *Id.* Similarly, ED may require schools to sign assurances of compliance pursuant to Title IX, even though the failure to sign such assurances is not itself a violation of Title IX (*i.e.*, does not itself constitute sex discrimination by the recipient). *See Grove City Coll. v. Bell*, 465 U.S. 555, 574 (1984).[1]

Plaintiffs contend that ED has prioritized non-statutory objectives over Title IX's purpose in crafting the Rule, *see, e.g.*, Pls.' Suppl. Br. at 3, ECF No. 91, but that is incorrect. Notably, most of Plaintiffs' arguments are simply a restatement of their views that the *sexual harassment* definition is improper and ought to be more expansive, *id.* at 3-4, or that the grievance process is unduly burdensome, *id.* at 5-6. But these provisions are reasonable for the reasons stated in

---

[1] It bears emphasis that ED must notify the recipient of a regulatory violation and attempt to seek voluntary compliance before ED may seek to suspend or terminate federal funding. Termination of federal funds is a "severe" enforcement remedy that serves as a "last resort" to ensure that federal funds are not used to support discriminatory practices in education programs or activities. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 705 n.38 (1979); *see also* Rule at 30,414 (citing same).

Defendants' opposition. And ED connected each of the Rule's provisions with Title IX's authorizing language in a manner that is no more attenuated or different in kind than the assurances of compliance of which the Supreme Court approved in *Grove City*, or the regulatory requirement for recipients to adopt and publish grievance procedures that the Supreme Court approved in *Gebser*. In delineating the circumstances under which a school would be liable under the Rule, for example, ED explained that it "has regulatory authority to select conditions and a liability standard different from those used in the *Gebser*/*Davis* framework, because the Department has authority to issue rules that require recipients to take administrative actions to effectuate Title IX's non-discrimination mandate." Rule at 30,033. And in setting forth the grievance process, ED explained that the "process effectuates Title IX's non-discrimination mandate both by reducing the opportunity for sex discrimination to impact investigation and adjudication procedures through the recipient's own actions during the handling of a complaint, and by promoting a reliable fact-finding process so that recipients are held liable for providing remedies to victims of sex discrimination in the form of sexual harassment perpetrated in the recipient's education program or activity." *Id.* at 30,101. The mandatory dismissal provision assists ED in setting clear expectations for recipients and students as to what conduct must be addressed through this grievance process. *See id.* at 30,289. ED's authority to establish a clear baseline for what a school must respond to, and how the school must respond, is therefore beyond question.



The primary focus of Plaintiffs' supplemental brief, and of the Court's questioning at oral argument, is whether ED can establish a "ceiling" beyond which schools may not act. *See* Pls.' Suppl. Br. at 3; *see also* Hr'g Tr. at 80:16-19 (asking "for supplemental briefs on . . . the Department's power to prohibit schools from doing more than was required or allowed under this rule"). But the Rule imposes no such ceiling. By its terms, the Rule creates a grievance process only for conduct that falls within the Department's definition of sexual harassment: if an allegation of misconduct does not fall within that definition, the Rule does not require or prohibit anything of schools regarding whether or how they must respond.

Plaintiffs contend that § 106.45(b)(3)(i) makes the Rule a ceiling because it requires recipients to dismiss formal complaints with allegations that (1) are not sexual harassment, (2) do not take place in an education program or activity, or (3) did not occur in the United States. But the purpose and effect of that provision is to create a floor, not a ceiling. It requires investigation of conduct within the scope of Title IX, and requires dismissal of only a "formal complaint with regard to that conduct [that falls outside the scope of Title IX] for purposes of sexual harassment under Title IX or [the Rule]; such a dismissal does not preclude action under another provision of the recipient's code of conduct."

Ironically, this provision was amended from the proposed provision in the notice of proposed rulemaking to ensure that schools had maximum flexibility in responding to alleged misconduct that does not fall within the scope of Title IX.[2] ED explained that the last clause of this section "clarifies that the department does not intend to dictate how a recipient responds with respect to conduct that does not meet the conditions specified in § 106.44(a)." Rule at 30,289. Section 106.45(b)(3)(i) mandates dismissal because a more permissive provision "would imply that if a recipient chose not to dismiss allegations about conduct that does not meet the conditions specified in § 106.44(a), the Department would nonetheless hold the recipient accountable for following the prescribed grievance process." *Id.* That, however, would extend the Rule beyond ED's intent: "the § 106.45 grievance process is only required for conduct that falls under Title IX." *Id.* Put simply, if conduct does not meet the Rule's definition of harassment under Title IX, schools may deal with it however they like, consistent with other statutory and constitutional requirements.

---

[2] *Compare* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 83 Fed. Reg. 61,462, 61,498 (proposed Nov. 29, 2018) (proposing § 106.45(b)(3) to require the following: "If the conduct alleged by the complainant would not constitute sexual harassment as defined in § 106.30 even if proved or did not occur within the recipient's program or activity, the recipient must dismiss the formal complaint with regard to that conduct.") *with* Rule at 30,576 (revising § 106.45(b)(3)(i) to state: "If the conduct alleged in the formal complaint would not constitute sexual harassment as defined in § 106.30 even if proved, did not occur in the recipient's education program or activity, or did not occur against a person in the United States, then the recipient must dismiss the formal complaint with regard to that conduct for purposes of sexual harassment under title IX or this part; such a dismissal does not preclude action under another provision of the recipient's code of conduct.").

This includes the flexibility for a school to cover that misconduct under a school's anti-sexual harassment policy and to apply the same procedures that the school must use for sexual harassment, as defined in the Rule, if the school so chooses. And that flexibility, which is clearly stated in the last clause, is further reinforced by the dismissal clause itself, which states only that the recipient "dismiss the formal complaint with regard to that content *for purposes of sexual harassment* under title IX or this part" because "sexual harassment" is a defined term in the Rule. *See* § 106.30.

Contrary to Plaintiffs' assertion, the Rule does not forbid schools from adjudicating complaints alleging sexual harassment (whether as defined in the Rule or not) filed by individuals who do not participate in an education program or activity, Pls.' Suppl. Br. at 5. By the plain text of Title IX, a recipient's obligations only extend to its education program or activity. *See* 20 U.S.C. § 1682 (limited to "any education program or activity"). Therefore, a recipient must dismiss a complaint from such an individual only "with regard to that conduct for purposes of sexual harassment under Title IX or [the Rule.]" *See* 34 C.F.R. § 106.45(b)(3)(i). However, to the extent that the complaint alleges a violation of another provision of the recipient's code of conduct— including sexual harassment to which the Rule does not apply because the individual does not participate in the education program or activity—the recipient may take "action under another provision of the recipient's code of conduct." *Id.*

Plaintiffs' concerns ultimately stem from a fear that ED could terminate an institution's federal funding if it refused to dismiss a complaint that did not meet the definition of sexual harassment under the Rule. As set out above, ED did not contemplate such a result from the mandatory dismissal provision, which it meant to ensure flexibility for schools, not to punish them for how they address misconduct falling outside Title IX and its implementing regulations. The mandatory dismissal provision also reflects ED's concern that ED *not* exceed ED's statutory authority. Because ED's regulatory authority stems from Title IX, ED cannot attempt or purport to govern a recipient's actions with respect to conduct not covered by Title IX. Thus, the mandatory dismissal provision reflects ED's intention not to govern how a recipient responds to conduct that falls outside the scope of Title IX. Rule at 30,289, 30,530.

Finally, even if Plaintiffs were right that the provision conceivably could lead to ED terminating a school's federal funding for merely referring to a proceeding as a "Title IX proceeding" with respect to misconduct that falls outside Title IX, ED has no intention of enforcing the Rule unreasonably, for instance by turning the Rule on its head and *reducing* the flexibility of recipients to proceed in whatever manner they prefer when conduct is not covered by the Rule's definition of the scope of Title IX. If ED disagreed with a recipient's characterization of a proceeding as falling under Title IX and a party dissatisfied with the recipient's handling of the proceeding filed an enforcement complaint, ED would only seek to clarify for the recipient and the parties involved in the proceeding that the situation designated by the recipient as a "Title IX proceeding" was not actually required under Title IX. However, such a clarification would not invalidate the recipient's handling of the proceeding since the Rule does not purport to govern how a recipient handles a non-Title IX matter. And the mandatory dismissal provision would not support termination of funds for failure to dismiss a complaint that alleged conduct outside the scope of Title IX. It is difficult to conceive that such a scenario would lead to administrative enforcement to terminate the recipient's Federal funding. In any event, this facial challenge is not the appropriate venue to adjudicate this farfetched hypothetical. *See Sherley v. Sebelius*, 644 F.3d 388, 397 (D.C. Cir. 2011).

## II.     Plaintiffs Have Waived This Statutory Authority Argument.

The arguments above are squarely sufficient to resolve this issue in ED's favor.  However, the Court need not reach these arguments at this time, because the issue as to whether ED has authority to regulate recipients' actions that are not directly covered by the statute was not squarely presented prior to the July 24, 2020 oral argument on Plaintiffs' motion for a preliminary injunction. A movant may not raise an argument for the first time during a preliminary-injunction hearing. *See Mylan Labs. Ltd. v. FDA*, 910 F. Supp. 2d 299, 312 (D.D.C. 2012) (argument waived when initially raised in reply supporting motion for preliminary injunction); *In Def. of Animals v. Salazar*, 675 F. Supp. 2d 89, 100 (D.D.C. 2009) (same). Plaintiffs failed to raise this specific argument in their complaint or their preliminary-injunction motion. Because Plaintiffs have

waived this argument, they have not met their burden of establishing entitlement to a preliminary injunction on this ground.

Plaintiffs' preliminary-injunction motion contains no contention that the Department lacks statutory authority to issue enforceable regulations. Indeed, Plaintiffs' contrary contention rests on examples culled from outside Section II.A. of its motion, which was entitled "The Rule's grievance process exceeds agency authority and is arbitrary and capricious." Mem. in Supp. of Mot. for Prelim. Inj. or 5 U.S.C. § 705 Stay at 13-22, ECF No. 22-2 ("Mot."). As Plaintiffs seem to concede, that section alleges only "detail[s]" regarding "how certain aspects of the grievance process" allegedly fall "outside the Department's authority because they do not 'effectuate' Title IX." Pls.' Suppl. Br. at 9. This discussion of the grievance process does not include any discussion of ED's authority to enforce compliance with the Rule.

Nor does the remainder of the motion raise such a contention. Instead, it makes a number of generalized assertions regarding ED's statutory authority, without raising this specific point of law. Thus, for example, the motion combines a generalized (though incorrect) characterization of various provisions of the Rule—*viz.*, that the Rule "restricts when and where sexual harassment must take place to violate Title IX, narrows what conduct qualifies as sexual harassment, and limits who can file a formal complaint to initiate a Title IX investigation"—with a broad allegation that "[t]hese restrictions, alone and in combination, are contrary to law, arbitrary and capricious, and exceed statutory authority." Mot. at 22-23. But this broad-based assertion does not raise the specific point that ED lacks the authority to regulate recipients' actions that are not covered by Title IX, and ED is not regulating any action that falls outside the statute's scope. The same is true of Plaintiffs' boilerplate assertions that the Rule purportedly "limits the reach of Title IX and denies students protection from conduct that was previously unlawful," *id*. at 22, or that its "grievance process exceeds agency authority." *Id*. at 2. Moreover, Plaintiffs' contention that ED "undermines Title IX and exceeds its own authority by proscribing recipient [schools'] ability to act on sexual harassment complaints only at the point where the complaints would rise to the level of liability for monetary damages," *id*. at 29, is made in the context of arguing that the Rule

impermissibly limits the *sexual harassment* definition rather than an argument about ED's statutory enforcement authority. Finally, Plaintiffs' argument that a school is allegedly placed more at risk of losing federal funding if it does not strictly comply with the Rule's grievance process than if it "fails to respond to sexual harassment, even in a manner that is just short of clearly unreasonable," *id*. at 22, does not mention statutory authority, much less ED's authority to enforce compliance with the Rule. *Cf*. Compl. ¶ 91, ECF No. 1 (making same argument). To the contrary, it rightly assumes that ED is permitted by statute to enforce compliance with regulations promulgated pursuant to 20 U.S.C. § 1682.

Nor does Plaintiffs' complaint address this specific issue of law in its formulation of the causes of action or otherwise—even if inclusion in the complaint would be sufficient to meet Plaintiffs' burden at the preliminary injunction stage, which of course it is not. Count I, entitled "Agency Action Not in Accordance With Law," *id*. ¶¶ 235-41, contends that the Rule is inconsistent with Title IX, not that the Department lacks authority to issue enforceable regulations. Count II, entitled "Agency Action in Excess of Statutory Authority," *id*. ¶¶ 242-46, includes a paragraph listing specific provisions of the Rule that Plaintiffs contend "do not effectuate Title IX's prohibition of discrimination on the basis of sex," *id*. ¶ 245. *Cf. id*. ¶ 3. But arguing that an agency has failed to effectuate a statute is not the same as contending that the agency lacks statutory authority to enforce a particular regulatory violation. The count where one would expect to find this argument is Count III, because it is entitled "Agency Action Not in Accordance With Law & in *Excess of Statutory Authority*" (emphasis added). But this count concerns only alleged inconsistencies between the Rule and the Family Educational Rights and Privacy Act (FERPA), rather than the Department's ability to enforce the Rule. *See id*. ¶¶ 247-54. And nothing in the complaint's remaining counts discusses this specific issue.

Finally, Plaintiffs mistakenly contend that their arguments regarding the Rule's mandatory dismissal provision necessarily involved the issue of whether ED may enforce a violation of the Rule. Pls.' Suppl. Br. at 8-9. But nothing in Plaintiffs' discussion of this provision suggests that

Plaintiffs additionally made a distinct assertion about ED's enforcement authority, or that an argument about the mandatory dismissal provision necessarily includes such a distinct assertion.

Because neither the complaint nor Plaintiffs' briefs raises the issue of whether ED possesses the authority to enforce its regulations pursuant to 20 U.S.C. § 1682, that issue has not been properly preserved for consideration.

### III.     The Court Should Sever Any Offending Provision.

In any event, even if the Court were to determine that some aspect of the Rule exceeded ED's authority to issue enforceable regulations under Title IX, the appropriate remedy would be to sever the offending provision. "In assessing severability, [courts in this Circuit] must contemplate whether [the agency] would have enacted the other challenged provisions in the absence of [the provision to be stricken]." *Cmty. for Creative Non-Violence v. Turner*, 893 F.2d 1387, 1394 (D.C. Cir. 1990) (citations omitted). "In such an inquiry, the presumption is always in favor of severability." *Id*. Here, ED included a provision stating that "[i]f any provision of this [Rule] or its application to any person, act, or practice is held invalid, the remainder of the [Rule] or the application of its provisions to any person, act, or practice shall not be affected thereby." 34 C.F.R. § 106.72. This provision was included to "make clear that these final regulations are designed to operate independently of one another." Rule at 30,538; *see also id*. (specifically concluding that "each of the regulations discussed in this preamble would serve one or more important, related, but distinct purposes"). Thus, if the Court were to determine that a specific provision of the Rule exceeded ED's statutory authority, it should strike that provision while allowing the remainder to go into effect.

Dated: August 3, 2020                                    Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

JENNIFER B. DICKEY
Deputy Associate Attorney General

DAVID M. MORRELL
Deputy Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

*/s/ Daniel Riess*

DANIEL RIESS
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Phone: (202) 353-3098
Fax: (202) 616-8460
E-mail: Daniel.Riess@usdoj.gov

*Attorneys for Defendants*