# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, et al.,<br><br>                              *Plaintiffs*,<br><br>     v.<br><br>ELISABETH D. DEVOS, in her official capacity as Secretary of Education, et al.,<br><br>                              *Defendants*,<br><br>     and<br><br>FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION, *et al*,<br><br>                              *Intervenor-Defendants,*<br><br>     and<br><br>STATE OF TEXAS,<br><br>          *[Proposed] Intervenor-Defendant.* | Case No. 20-cv-01468-CJN |

## MEMORANDUM IN SUPPORT OF TEXAS' PARTIALLY OPPOSED

## MOTION TO INTERVENE

## TABLE OF CONTENTS

Table of Contents ................................................................................................................ i

Background ....................................................................................................................... 1

Legal Standard ................................................................................................................. 3

Argument .......................................................................................................................... 4

   I.    The Court should grant intervention as of right. ........................................................ 4

      A.    Texas' motion is timely ................................................................................... 4

      B.    Texas has significant protectable interests directly affected by this litigation. ........... 6

      C.    Disposition of this action may impair or impede Texas' ability to protect its interests. ....................................................................................................................... 10

      D.    The parties no longer adequately represent Texas' interests. ..................................... 11

         1.    The incoming administration is hostile to the Rule and Texas' interests. .................. 11

         2.    Existing intervenors do not have the same interests as Texas. ................................. 12

   II.    In the alternative, the Court should permit permissive intervention. ............................ 14

Conclusion ...................................................................................................................... 15

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*100Reporters LLC v. U.S. Dep't of Justice,*
    307 F.R.D. 269 (D.D.C. 2014) ........................................................................... 10, 11

*Builders Ass'n of Greater Chi. v. City of Chicago,*
    170 F.R.D. 435 (N.D. Ill. 1996) ............................................................................. 12

*Cayuga Nation v. Zinke,*
    324 F.R.D. 277 (D.D.C. 2018) ............................................................................... 11

*Commonwealth of Pennsylvania v. President of the United States of Am.,*
    888 F.3d 52 (3d Cir. 2018) ..................................................................................... 19

*Daggett v. Comm'n on Gov't Ethics,*
    172 F.3d 104 (1st Cir. 1999) (Lynch, J., concurring) .............................................. 9

*Doe v. Univ. of Scis.,*
    961 F.3d 203 (3d Cir. 2020) ................................................................................... 14

*E.E.O.C. v. Nat'l Children's Ctr., Inc.,*
    146 F.3d 1042 (D.C. Cir. 1998) ......................................................................... 9, 20

*Edwards v. City of Houston,*
    78 F.3d 983 (5th Cir. 1996) ..................................................................................... 8

*Envtl. Def. Fund, Inc. v. Costle,*
    79 F.R.D. 235 (D.D.C. 1978), *aff'd* (D.C. Cir. July 31, 1978) ........................ 15, 20

*Feller v. Brock,*
    802 F.2d 722 (4th Cir. 1986) ................................................................................. 16

*Forest Cty. Potawatomi Cmty. v. United States,*
    317 F.R.D. 6 (D.D.C. 2016) .............................................................................. 11, 16

*Fund For Animals, Inc. v. Norton,*
    322 F.3d 728 (D.C. Cir. 2003) ......................................................................... 16, 17

*Hodgson v. United Mine Workers of Am.,*
    473 F.2d 118 (D.C. Cir. 1972) ............................................................................... 10

*Humane Soc. of U.S. v. Clark,*
    109 F.R.D. 518 (D.D.C. 1985) ............................................................................... 20

*Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.,*
106 F.R.D. 106 (D.D.C. 1985) ..................................................................... 15

*Kleissler v. U.S. Forest Serv.,*
157 F.3d 964, 973 (3d Cir. 1998 ................................................................ 19

*Nat. Res. Def. Council v. Costle,*
561 F.2d 904 (D.C. Cir. 1977) ..................................................................... 15

*New Hampshire v. Holder,*
293 F.R.D. 1 (D.D.C. 2013)......................................................................... 19

*Nuesse v. Camp,*
385 F.2d 694 (D.C. Cir. 1967) .......................................................... 9, 15, 16

*Roane v. Leonhart,*
741 F.3d 147 (D.C. Cir. 2014) ...................................................................... 9

*Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt,*
331 F.R.D. 5 (D.D.C. 2019)......................................................................... 19

*Smith v. Marsh,*
194 F.3d 1045 (9th Cir. 1999) ..................................................................... 10

*Smoke v. Norton,*
252 F.3d 468 (D.C. Cir. 2001) ...................................................................... 9

*Smuck v. Hobson,*
408 F.2d 175 (D.C. Cir. 1969) ..................................................................... 16

*Trbovich v. United Mine Workers of Am.,*
404 U.S. 528 (1972) ............................................................................. 16, 18

*United States v. AT&T,*
642 F.2d 1285 (D.C. Cir. 1980)................................................................... 16

*United States v. Facebook, Inc.,*
456 F. Supp. 3d 105 (D.D.C. 2020) ............................................................ 8, 9

*Ute Indian Tribe of Uintah & Ouray Indian Reservation v. U.S. Dep't of the
Interior,*
1:18-CV-00547, 2020 WL 1465886 (D.D.C. Feb. 5, 2020) ...................... 10

*W. Energy All. v. Zinke,*
877 F.3d 1157 (10th Cir. 2017) ............................................................. 10, 16

*Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*,
   395 F. Supp. 3d 1 (D.D.C. 2019) ................................................................. 11, 15

*Waterkeeper All., Inc. v. Wheeler*,
   330 F.R.D. 1 (D.D.C. 2018)........................................................................ 15

*Weinberg v. Barry*,
   604 F. Supp. 390 (D.D.C. 1985)................................................................ 20

**State Statutes**

Tex. Educ. Code § 4.001 ............................................................................ 18

**Rules**

Fed. R. Civ. P. 24(b)(1)(B).................................................................... 20, 21

**Constitutional Provisions**

Tex. Const. Article VII, § 1 ..................................................................... 12

**Other Authorities**

7C Charles Alan Wright, *et al.*, Fed. Prac. & Proc. Civ. § 1917 (3d ed...................... 19

*Accusers and Accused*, Insider Higher Ed (Oct. 3, 2019),
   https://www.insidehighered.com/news/2019/10/03/students-look-federal-
   courts-challenge-title-ix-proceedings.................................................... 14

Janet Napolitano, *"Only Yes Means Yes": An Essay on University Policies
   Regarding Sexual Violence and Sexual Assault*, 33 Yale L. & Pol'y Rev.
   387, 394–395 (2015).................................................................................. 13

Tex. Educ. Agency, 2020 *Comprehensive Biennial Report on Texas Public
   Schools* at 297 (Dec. 4, 2020)................................................................. 12

Tex. Higher Educ. Coordinating Bd., *2020 Texas Public Higher Education
   Almanac* (Sept. 28, 2020) ....................................................................... 12

The State of Texas ("Texas") moves to intervene in defense of the Department of Education's ("the Department") Final Rule addressing Title IX obligations, which took effect on August 14, 2020.[1] At the start of this suit, Texas' interests were aligned with the Department. On January 20, however, President elect Joe Biden will assume office and redirect the Department's policy regarding Title IX. The President elect has condemned the Final Rule, calling it "a green light to ignore sexual violence" and promising to bring it to a "quick end." *The Biden Agenda for Women*, JOEBIDEN.COM, https://joebiden.com/womens-agenda/ (last visited Jan. 15, 2021).  In light of this sea change, Texas can no longer rely on the Department to adequately represent its interests in defending the Final Rule.

## BACKGROUND

During the Obama Administration, the Department issued its misguided 2011 Dear Colleague Letter[2] and 2014 Questions and Answers on Title IX Sexual Violence ("2014 Question and Answers").[3] Although neither underwent notice and comment rulemaking, the two guidance documents put recipients in a no-win situation where either conforming or failing to conform to the guidance documents would expose them to significant risk of litigation.[4] The President-elect played a key role in the development and implementation of the Obama Administration's policies

---

[1] *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,026 (May 19, 2020).

[2] Russlynn Ali, OCR, U.S. Dept. of Educ., Dear Colleague Letter: Sexual Violence (Apr. 4, 2011), http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf.

[3] U.S. Dept. of Educ., *Questions and Answers on Title IX and Sexual Violence* (Apr. 24, 2014), https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf.

[4] *See*, *e.g.*, Taylor Mooney, *How Betsy DeVos plans to change the rules for handling sexual misconduct on campus*, CBS NEWS (Nov. 24, 2019) ("Prior to 2011, the number of lawsuits filed against universities for failing to provide due process in Title IX cases averaged one per year. It is expected there will be over 100 such lawsuits filed in 2019 alone."), https://www.cbsnews.com/news/title-ix-sexual-misconduct-on-campus-trump-administration-changing-obama-rules-cbsn-documentary/.

on sexual harassment,[5] including the changes the administration advanced regarding Title IX. The President-elect, in fact, stood as the Obama Administration's spokesperson for the Dear Colleague Letter, announcing its publication to students at the University of New Hampshire in Durham. *See* Press Release, U.S. Dept. of Educ., *Vice President Biden Announces New Administration Effort to Help Nation's Schools Address Sexual Violence* (Apr. 4, 2011), https://www.ed.gov/news/press-releases/vice-president-biden-announces-new-administration-effort-help-nations-schools-ad.

In response to growing criticism, the Department rescinded the Dear Colleague Letter and the 2014 Questions and Answers in 2017.[6] It soon became apparent, however, that the withdrawal could not repair the damage caused by the two guidance documents on its own, as there was significant confusion regarding recipients' obligations to combat sexual harassment. On May 19, 2020, therefore, the Department issued the Final Rule that is the subject of this action. The Final Rule, for the first time, clearly demarcated the outer boundaries of federal fund recipients' obligations under Title IX with respect to sexual harassment. It thereby reduced their risk of liability and resolved the dilemma of how to enforce Title IX without sacrificing the rights of either the victims of sexual harassment or the accused.

At the time this lawsuit commenced, the Department understood and respected the detrimental impact that the Obama Administration's misguided guidance documents had on common providers of education like Texas. That will all change on January 20, 2021 when the President-elect is inaugurated into office. The President-elect has not altered his opinion about

---

[5] Unless otherwise stated, the term "sexual harassment" encompasses all forms of sexual harassment, including sexual violence and sexual assault. Likewise, unless otherwise stated, the term, "academic institutions" encompasses all entities covered by the new Final Rule issued by the Department, including schools, colleges, and universities, both primary and secondary.

[6] *See* Candice Jackson, OCR, U.S. Dept. of Educ., Dear Colleague Letter (Sept. 9, 2017), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf.

Title IX policy since advocacy of the Dear Colleague Letter. He has announced his intent to advance the same objectives for Title IX as he did during the Obama Administration, which means curtailing, if not repealing outright, the reforms contained in the Final Rule. *See The Biden Plan To End Violence Against Women*, JOEBIDEN.COM, https://joebiden.com/vawa/ (last visited Jan. 15, 2021). To that end, the President-elect has promised his supporters that the Department under his administration will put a "quick end" to the Final Rule. *The Biden Agenda for Women*, JOEBIDEN.COM, https://joebiden.com/womens-agenda/ (last visited Jan. 15, 2021). As head of the executive branch, the incoming President will have authority over the Department. His objectives will inform the Department's approach to Title IX, up to and including the Department's defense of the Final Rule and the resolution of this lawsuit. Texas therefore files this motion to intervene.

## LEGAL STANDARD

The Federal Rules provide two mechanisms for third-party intervention in a lawsuit: intervention of right under Federal Rule of Civil Procedure 24(a) and permissive intervention under Rule 24(b). For intervention of right to apply, the movant must demonstrate that: (1) the motion is timely; (2) the movant has a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) the movant's interest is not adequately represented by the existing parties. *See United States v. Facebook, Inc.*, 456 F. Supp. 3d 105, 108 (D.D.C. 2020). "[T]he inquiry" into these factors "is a flexible one, which focuses on the particular facts and circumstances surrounding each application." *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996). Accordingly, "intervention of right must be measured by a practical rather than technical yardstick." *Facebook*, 456 F. Supp. 3d at 108.

To qualify for permissive intervention, the movant must show: (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question

of law or fact in common with the main action. *Facebook*, 456 F. Supp. 3d at 108. "As its name would suggest, permissive intervention is an inherently discretionary enterprise." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). The D.C. Circuit has adopted "a liberal application in favor of permitting intervention." *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967). A liberal approach to intervention is especially appropriate "where the subject matter of the lawsuit is of great public interest, the intervenor has a real stake in the outcome and the intervention may well assist the court in its determination through . . . the framing of issues." *Daggett v. Comm'n on Gov't Ethics*, 172 F.3d 104, 116–17 (1st Cir. 1999) (Lynch, J., concurring).

Texas meets the requirements for both intervention as of right and permissive intervention.

## ARGUMENT

## I. The Court should grant intervention as of right.

### A. Texas' motion is timely.

In light of the impending change of Administrations, Texas moves to intervene in defense of the Final Rule. The motion is timely because it was filed close in time to the change in circumstances requiring intervention: President-elect Biden's inauguration on January 20. *See Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (judging a motion to intervene timely because it was filed when "the potential inadequacy of representation came into existence").

The timeliness of a motion to intervene is "judged in consideration of all the circumstances." *Id.* (quoting *United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980)). Though the "time elapsed since the inception of the suit is relevant, measuring the length of time passed is not in itself the determinative test," *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (internal citations omitted), "particularly where intervention is sought as of right." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 129 (D.C. Cir. 1972). Rather, "[t]he crucial date for

assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

During the Trump Administration, Texas had no reason to intervene. Like Texas, the previous administration defended the Final Rule as an effective means of combating sexual harassment without sacrificing either clarity or constitutional liberties. The President-elect, however, has expressed open and adamant hostility to the Final Rule, necessitating Texas' intervention if it is to protect its interests. *See infra* at I.D; *see also W. Energy All. v. Zinke*, 877 F.3d 1157, 1169 (10th Cir. 2017) (holding that "the change in the Administration raises the possibility of 'divergence of interest' or a 'shift' during litigation"). The Department will cease adequately representing Texas' interests only after January 20, 2021 when the new administration takes over and begins implementing its own policies. This is not an occasion where a non-party sat on its rights. Texas has actively monitored the present action from the beginning and exhibited proper diligence in bringing its motion.

Further, the timing of Texas' motion does not prejudice any of the existing parties. As this Court previously held, courts "do not require timeliness for its own sake." *100Reporters LLC v. U.S. Dep't of Justice*, 307 F.R.D. 269, 275 (D.D.C. 2014) (quoting *Roane,* 741 F.3d at 151); *see Ute Indian Tribe of Uintah & Ouray Indian Reservation v. U.S. Dep't of the Interior*, 1:18-CV-00547 (CJN), 2020 WL 1465886, at *1 (D.D.C. Feb. 5, 2020) ("[T]he timeliness requirement was not designed to penalize prospective intervenors for failing to act promptly."). The requirement is instead "aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." Thus, "in assessing timeliness," the court must weigh "whether any delay in seeking intervention unfairly disadvantaged the original parties."

*100Reporters*, 307 F.R.D. at 275 (citing *Roane*, 741 F.3d at 151); *see* 7C Charles Alan Wright, *et al.*, Fed. Prac. & Proc. § 1916 (3d ed.) ("The most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case.").

This case is still in its relatively early stages. The Department has not yet filed its answer. *See*, *e.g.*, *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec*., 395 F. Supp. 3d 1, 19 (D.D.C. 2019) (deeming intervention timely after positively noting that defendant failed to file answer even though the case commenced three years ago); *Forest Cty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 13 (D.D.C. 2016) (ruling intervention timely nine months after litigation commenced because it was filed before any of the defendants had filed an answer). And while the parties have started filing dispositive motions over the past month, Texas' addition will not disrupt or delay the parties' schedule or force the parties to assume additional work. Texas adopts, as its own, the arguments that the Department makes in its cross-motion for summary judgment and its brief opposing Plaintiff States' motion for summary judgment – both of which will be filed before January 20, 2021. Texas merely seeks the opportunity to defend these arguments after the Biden Administration assumes office and the Department is no longer able to adequately represent Texas' interests. Texas also agrees to abide by the schedule the parties negotiated. *See Cayuga Nation v. Zinke*, 324 F.R.D. 277, 284 (D.D.C. 2018) (requiring that intervening party submits non-cumulative arguments and complies with scheduling order). Texas' intervention therefore will have minimum impact on the original parties. If anything, Texas' addition will avert a potential disruption to the case should the federal government withdraw its support of the Final Rule and refuse to defend it. The motion is timely.

**B.    Texas has significant protectable interests directly affected by this litigation.**

As a provider of public education, Texas has clear and substantial interests at stake in this action. Indeed, its interests are the "mirror-image" of Plaintiff States' interests. While the Plaintiff States allege that they "are being injured by the [Final Rule]," Texas "w[ould] be injured by [the Final Rule's] invalidation." *Builders Ass'n of Greater Chi. v. City of Chicago*, 170 F.R.D. 435, 440 (N.D. Ill. 1996).

Like Plaintiff States, Texas "administers a system of primary and secondary public education that is funded by both state and federal money." ECF 102 ¶ 274; *see also* Tex. Educ. Agency, 2020 *Comprehensive Biennial Report on Texas Public Schools* at 297 (Dec. 4, 2020) (reporting that Texas received $5.3 billion dollars for K-12 education), https://tea.texas.gov/ sites/default/files/comp_annual_biennial_2020.pdf. The Texas Constitution charges the Texas Legislature "to establish and make suitable provision for the support and maintenance of an efficient system of public free schools." Tex. Const. art. VII, § 1. Pursuant to this charge, Texas funds, regulates, and oversees the second largest system of K–12 public education in the nation, serving over 5.4 million students across 1,200 school districts. Tex. Educ. Agency, *Enrollment in Texas Public Schools 2019-20* at 1 (Aug. 12, 2020), https://tea.texas.gov/sites/default/files/enroll _2019-20.pdf.

Texas also funds, supports, and administers a robust network of higher education—same as Plaintiff States. *See* ECF 102 ¶ 277. Texas is home to 119 public postsecondary institutions, including 37 universities and 82 two-year colleges and technical schools. *See* Tex. Higher Educ. Coordinating Bd., *2020 Texas Public Higher Education Almanac* at 28, 47 (Sept. 28, 2020), https://reportcenter.highered.texas.gov/agency-publication/almanac/2020-texas-public-higher-ed ucation-almanac/. While most states have just one or two public university systems, Texas has six. The largest of these systems—the University of Texas—has 14 separate locations that educate

approximately 240,000 students each year. *See About The University of Texas System*, THE UNIVERSITY OF TEXAS SYSTEM, https://www.utsystem.edu/about (last visited Jan. 15, 2021). All told, the State's entire network of higher education enrolled just shy of 1.7 million students in 2019. *See* Tex. Higher. Educ. Coordinating Bd., at 13.

Because Texas "receives federal funding from the Department for primary and secondary education, [Texas] and its public primary and secondary education systems are subject to" the Final Rule. ECF 102 ¶ 276. Likewise, "[e]ach of the institutions in [Texas's] systems of higher education receives federal funding and, as a result, is subject to the Rule" as well. ECF 102 ¶ 279. This means that Texas and its academic institutions have an obligation to investigate and enforce alleged violations of Title IX. Texas is intensely interested in the Final Rule as a result.

First, the Final Rule clarified the definition of sexual harassment as well as the conditions that must be met before a recipient's obligations under Title IX are activated. Invalidating the Final Rule would create uncertainty, harming the Texas institutions regulated under Title IX. *See infra* Part I.C. Earlier guidance had caused a great deal of uncertainty regarding recipients' legal responsibilities under Title IX.[7] Recipients did not know how to comply with the new mandates or whether failure to do so would incur legal consequences. *See* Janet Napolitano, *"Only Yes Means Yes": An Essay on University Policies Regarding Sexual Violence and Sexual Assault*, 33 YALE L. & POL'Y REV. 387, 394–395 (2015).

---

[7] The Task Force on Federal Regulation of Higher Education specifically identified the Dear Colleague Letter and 2014 Question and Answers as guidance documents that were meant to eliminate uncertainty but only led to more confusion. *See Recalibrating Regulation of Colleges and Universities* at 14 (Feb. 12, 2015), *available at* https://www.acenet.edu/Documents/Higher-Education-Regulations-Task-Force-Report.pdf.

In an abundance of caution, many academic institutions, including those funded by Texas, elected to revise their policies to cover a greater range of conduct and make it easier for administrators to arrive at a determination of guilt. *See Doe v. Univ. of Scis.*, 961 F.3d 203, 213 (3d Cir. 2020) (describing the pressure universities faced as a result of the Dear Colleague Letter). But that led to litigation. Hundreds of lawsuits have been filed since the Dear Colleague Letter was issued—a sizeable number of which academic institutions lost or settled. *See* Jonathan Taylor, Milestone: 600+ Title IX/Due Process Lawsuits in Behalf of Accused Students, Title IX for All (Apr. 1, 2020), https://www.titleixforall.com/milestone-600-title-ix-due-process-lawsuits-in-behalf-of-accused-students.

Second, the Final Rule reduced Texas' risk of liability. While previous guidance had supported an improperly broad view of Title IX liability, the Final Rule fixed those issues. By confining Title IX liability to proper limits set by statute, the Final Rule benefits Texas. If it were invalidated, Texas institutions would be subject to litigation expenses, which, in turn, would lead to higher compliance costs and diversion of resources.

In short, earlier guidance put Texas institutions between a rock and a hard place. Not following the guidance would risk federal enforcement actions, but following the guidance would lead to lawsuits, litigation expenses, and ultimately monetary settlements. *Id.*; *see also* Greta Anderson, *More Title IX Lawsuits by Accusers and Accused*, INSIDER HIGHER ED (Oct. 3, 2019), https://www.insidehighered.com/news/2019/10/03/students-look-federal-courts-challenge-title-ix-proceedings (describing the "high cost of addressing sexual misconduct. . . a lose-lose situation for universities"). The Final Rule, by contrast, resolves the dilemma. It provides clear guidance limiting Texas' liability and reducing expected litigation expenses.

These interests support intervention. If Plaintiff States' systems of public education give them standing to challenge the Final Rule, then Texas' system similarly gives it a protectable interest sufficient for intervention. *See Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 105 F.R.D. 106, 109 (D.D.C. 1985) (explaining that the court follows a "liberal formulation of the 'interest' test," which is more forgiving than the interest necessary to initiate a lawsuit); *Nuesse,* 385 F.2d at 700 (describing the purpose of the interest test as "involving as many apparently concerned persons as is compatible with efficiency and due process").

### C. Disposition of this action may impair or impede Texas' ability to protect its interests.

As explained above, the Final Rule provides important benefits to Texas, its schools, and its citizens. It both limits the scope of potential Title IX liability and also provides clarity that helps schools follow the law. But Plaintiffs ask this Court to deprive Texas of those benefits by vacating the Final Rule. *See* ECF 102 § 14. Those "practical consequences" are more than sufficient to show impairment of Texas' interests. *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977). When a movant benefits from a regulation, invalidation of that regulation would necessarily impair the movant's interests. *See, e.g.*, *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 395 F. Supp. 3d 1, 20 (D.D.C. 2019); *Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 8 (D.D.C. 2018); *Envtl. Def. Fund, Inc. v. Costle*, 79 F.R.D. 235, 242 (D.D.C. 1978), *aff'd*, (D.C. Cir. July 31, 1978).

"[R]elegat[ion] to the status of amicus curiae" would not enable Texas to protect their interests in this case and "is not an adequate substitute for participation as a party." *Nuesse*, 385 F.2d at 704 n.10. In such a scenario, no party would provide a comprehensive defense of the Final Rule to the Court. Texas would not be able to file motions or appeal if necessary. *Id.* Although Texas acted as amicus curiae earlier in the proceeding, it did so when the Department adequately

represented Texas' interests and Texas was merely supplementing the Department's arguments. For the reasons stated below, those interests will diverge on January 20, 2021. *See infra* Part I.D. Texas will likely be the sole party then defending the Final Rule in its entirety, making it essential that its arguments be part of the Court's deliberations. "Participation by [Texas] as amicus curiae is not sufficient to protect against these practical impairments." *Feller v. Brock*, 802 F.2d 722, 730 (4th Cir. 1986). Texas should be granted intervenor status.

### D.    The parties no longer adequately represent Texas' interests.

Rule 24(a)'s inadequate representation requirement is "not onerous." *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (citing *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986)). "[T]he burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Movants "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980); *see also Smuck v. Hobson*, 408 F.2d 175, 181 (D.C. Cir. 1969) (holding that the burden is on the parties opposing intervention to demonstrate that existing representation is adequate). After January 20, neither the Department nor the current Intervenor-Defendants will adequately represent Texas' interests.

### 1.    The incoming administration is hostile to the Rule and Texas' interests.

As an initial matter, "the change in the Administration raises 'the possibility of divergence of interest' or a 'shift' during litigation." *W. Energy All*, 877 F.3d at 1169. This possibility, on its own, satisfies Rule 24(a)'s requirement of inadequate representation. *See Forest Cty. Potawatomi Cmty.*, 317 F.R.D. at 11 (stating that all movant need show is "a *possibility* that its interests may not be adequately represented absent intervention") (emphasis added). However, in addition to the

general uncertainty surrounding a change of party in the White House, the President-elect has repeatedly (and erroneously) asserted that the Final Rule is "a green light to ignore sexual violence." *The Biden Agenda for Women*, JOEBIDEN.COM, https://joebiden.com/womens-agenda/ (last visited Jan. 15, 2021).  Promising to put a "quick end" to the Final Rule, he plans to "restore [earlier] Title IX guidance for colleges, including the 2011 Dear Colleague Letter."[8] *Id*; *The Biden Plan To End Violence Against Women*, JOEBIDEN.COM, https://joebiden.com/vawa/ (last visited Jan. 15, 2021). These statements are evidence of an unavoidable, fundamental divide between Texas and the Department under the President-elect's incoming administration. Texas cannot trust that the Department will serve as an adequate representative going forward.

> ### 2.    Existing intervenors do not have the same interests as Texas.

Earlier in the proceedings, the Court permitted the intervention of three non-profits dedicated to promoting free speech and due process on college campuses. Although these organizations support the Final Rule, they represent "different interest[s]" than Texas. *Fund For Animals*, 322 F.3d at 737 (holding "that interests need not be wholly adverse" for representation to be inadequate). The Intervenor-Defendants advocate on behalf of students, alumni, and faculty, many of whom were subject to Title IX proceedings. Texas, in contrast, is a provider of public education, for which it and its associated academic institutions receive federal funds. Thus, whereas Intervenor-Defendants represent individuals whose rights may have been violated as a result of a Title IX action, Texas represents institutions subject to Title IX.

---

[8] The President-elect offered similar remarks in a statement he and his campaign released following the Department's announcement of the Final Rule, whereby he promised the Final Rule would "be put to a quick end in January 2021." Joe Biden, *Statement on the Trump Administration Rule to Undermine Title IX and Campus Safety* (May 6, 2020), https://medium.com/@JoeBiden /statement-by-vice-president-joe-biden-on-the-trump-administration-rule-to-undermine-title-ix-and-e5dbc545daa.

The differences between Texas and Intervenor-Defendants do not end there. As sovereign, Texas has an independent duty to provide "a quality education that enables [students] to achieve their potential and fully participate now and in the future in the social, economic, and educational opportunities of our state and nation." TEX. EDUC. CODE § 4.001. In doing so, Texas must respect the rights of students suffering from sexual harassment as well as those accused of misconduct. The Intervenor-Defendants, as private parties, are not subject to the same tensions. *Cf. Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 539 (1972) (concluding that government cannot adequately represent private parties because it is also entrusted with protecting vital public interests).

Because of these differences, Texas and the Intervenor-Defendants have adopted distinct legal positions, which has significant implications for the resolution of this case. Texas takes a position similar to the one advanced by the Department prior to the change in administration: namely, it emphasizes that the Final Rule is consistent with federal statutes that form the basis of Plaintiff States' suit. The Intervenor-Defendants, on the other hand, contend that the Constitution mandates many of the provisions in the Final Rule notwithstanding what is authorized by federal statute.

The Intervenor-Defendants explained in their motion to intervene that courts, including the D.C. Circuit, "look skeptically on government entities serving as adequate advocates for private parties." ECF 27 at 12 (quoting *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015)). This is because governments often serve "numerous complex and conflicting interests" that have the potential to affect their approach to litigation. *Commonwealth of Pennsylvania v. President of the United States of Am.*, 888 F.3d 52, 61 (3d Cir. 2018) (citing *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 973 (3d Cir. 1998)). The same logic

applies here, just in reverse. As private parties, the Intervenor-Defendants lack the complex and competing duties and concerns that define Texas' interest in Plaintiff States' challenge to the Final Rule.

## II.   In the alternative, the Court should permit permissive intervention.

Texas satisfies all the requisites for permissive intervention. *See New Hampshire v. Holder*, 293 F.R.D. 1, 8 (D.D.C. 2013) (requiring movant to show an independent ground for subject matter jurisdiction, a timely motion, and claim or defense that has a question of law or fact in common with the main action). The Court should exercise its "wide latitude" and permit Texas to intervene in this action even if Texas does not qualify for intervention as of right. *Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 9 (D.D.C. 2019).

First, Texas has an independent ground for subject matter jurisdiction, as the action raises a federal question. *See* 7C Charles Alan Wright, *et al.*, Fed. Prac. & Proc. Civ. § 1917 (3d ed.) ("[T]he need for independent jurisdictional grounds is almost entirely a problem of diversity litigation. In federal-question cases there should be no problem of jurisdiction with regard to an intervening defendant nor is there any problem when one seeking to intervene as a plaintiff relies on the same federal statute as does the original plaintiff.").

Second, Texas' motion is timely. As explained above, the need for intervention arises on January 20, so Texas has not delayed, much less prejudiced any existing parties. *See supra* Part I.A.

Third, Texas' position in support of the Final Rule involves common questions of law and fact. *Nat'l Children's Ctr.,* 146 F.3d at 1047 (noting courts in this jurisdiction "afforded this requirement considerable breadth"). Both "the main action" and Texas' defense center on whether the Final Rule is consistent with Title IX and the Administrative Procedures Act. Fed. R. Civ. P.

24(b)(1)(B). Those common questions of law and fact are sufficient for permissive intervention. *See Weinberg v. Barry*, 604 F. Supp. 390, 392 n.1 (D.D.C. 1985).

Finally, the Court should exercise its discretion to permit intervention because Texas offers a unique, important perspective that is currently absent from the proceeding. *See Humane Soc. of U.S. v. Clark*, 109 F.R.D. 518, 521 (D.D.C. 1985) (judging it appropriate "[i]n light of the 'scope and complexity of plaintiffs' challenge,'" to have absent interests "directly represented"). Like Plaintiff States, Texas is a common provider of education, whose schools, universities, and other academic programing are subject to Title IX. But unlike Plaintiff States, Texas believes that the Final Rule will not only facilitate enforcement of Title IX but also discourage unconstitutional practices that have violated the rights of individuals accused of misconduct. *See Envtl. Def. Fund, Inc. v. Costle*, 79 F.R.D. 235, 244 (D.D.C. 1978), *aff'd*, (D.C. Cir. July 31, 1978) (considering whether movant will "supplement the position already taken by the other parties").

Texas can provide a broad-based defense of the Final Rule, enabling the Court to fully assess its validity through adversarial proceedings, despite the new Administration's change of position on the merits. *Clark*, 109 F.R.D. at 521 (granting intervention because movant showed "willingness and ability to contribute to the full development of the factual and legal issues presented").

## CONCLUSION

For the foregoing reasons, the State of Texas respectfully requests that the Court grant its motion to intervene as a matter of right under Rule 24(a) or, in the alterative, for permissive intervention under Rule 24(b).

Date: January 19, 2021

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

PATRICK K. SWEETEN
Associate Deputy for Special Litigation
Texas State Bar No. 00798537

WILLIAM T. THOMPSON
Special Counsel
Texas State Bar No. 24088531

*/s/ Kathleen T. Hunker*
KATHLEEN T. HUNKER
Special Counsel
Texas State Bar No. 24118415

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 936-1414
Fax: (512) 936-0545
patrick.sweeten@oag.texas.gov
kathleen.hunker@oag.texas.gov
will.thompson@oag.texas.gov

16