UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>PHILIP H. ROSENFELT, *in his official capacity as Acting Secretary of Education*, *et al.*,<br><br>    Defendants,<br><br>and<br><br>FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION, *et al.*,<br><br>    Intervenor-Defendants. | Civil Action No. 20-cv-01468-CJN |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
STATE OF TEXAS' MOTION TO INTERVENE**

In this suit, Plaintiff States seek vacatur of the Department of Education's Title IX Rule, 85 Fed. Reg. 30,026 (May 19, 2020), which requires schools in Plaintiff States to adopt sexual harassment policies and procedures that comply with Rule's unlawful requirements. The Rule went into effect on August 14, 2020, and the parties are currently in the midst of briefing cross-motions for summary judgment.

One day before a new president was sworn into office, the State of Texas moved to intervene based on speculation that President Biden will "redirect the Department's policy regarding Title IX," reinstate prior Department policy, and refuse to defend the Title IX Rule. Tex. Mem. in Support of Mot. to Intervene at 1 (ECF No. 130-1) ("Tex. Mem."). Despite seeking to defend the Rule, Texas spends little space actually discussing the Rule's requirements. Texas also fails to identify any practical impact from vacating the Rule—nor could it, because vacatur would leave untouched the ability of Texas schools to continue using sexual harassment policies and procedures consistent with the Rule's requirements.

Instead, Texas spends the majority of its memorandum criticizing two Obama-era policy documents that were withdrawn in 2017. *E.g.*, Tex. Mem. at 1-3, 8-9, 12; *see* U.S. Dep't of Educ. *Department of Education Issues New Interim Guidance on Campus Sexual Misconduct* (Sept. 22, 2017) (withdrawing Russlyn Ali, Assistant Sec'y for Civil Rights, U.S. Dep't of Educ., Office for Civil Rights, Dear Colleague Letter (Apr. 4, 2011) and U.S. Dep't of Educ., *Q&A on Title IX and Sexual Violence* (Apr. 24, 2014)).[1] In essence, Texas' interest in intervening is a concern that the Biden Administration may issue new policy documents that may resemble withdrawn policies issued by the Obama Administration. But this litigation addresses only the legality of a rule issued by the Department in May 2020 and Plaintiff States do not seek reinstatement of earlier policy documents.

For these reasons, the motion to intervene should be denied. Texas is not entitled to intervene as of right: no outcome of this litigation can impair the interests of Texas and its schools, and its speculative fears about actions the Biden Administration might take exceed the scope of this litigation. And because Texas seeks primarily to prevent future actions of the Biden Administration, the Court should not allow permissive intervention.

## ARGUMENT

### I.     Texas is not entitled to intervene as of right.

Texas fails to carry its burden to show entitlement to intervention as of right. Federal Rule of Civil Procedure 24(a) requires the movant to (1) file a timely application to intervene; (2) demonstrate a legally protected interest in the action; (3) show that the action threatens to impair that interest; and (4) show that no party in the action can adequately represent that interest. *See Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 192 (D.C. Cir. 2013). Texas "must satisfy all four elements of the Rule in order to intervene as of right." *Jones v. Prince George's Cty., Maryland*, 348 F.3d 1014, 1019 (D.C. Cir. 2003). But Texas cannot do so here,

---

[1] https://www.ed.gov/news/press-releases/department-education-issues-new-interim-guidance-campus-sexual-misconduct.

for two reasons: the outcome of this litigation will not impair a legally protected interest and its claim of inadequate representation is purely speculative.

Whether an action will impair the movant's interest is a question that "must be put in practical terms rather than in legal terms." 7C Wright & Miller Fed. Prac. & Proc. Civ. § 1908.2 (3d ed.). Practical consequences exist "when the unsuccessful disposition of the action would result in a substantial change in the status quo" with respect to the movant, "such that the task of reestablishing the status quo if plaintiffs succeed will be difficult and burdensome." *Wash. All. of Tech. Workers v. DHS*, 395 F. Supp. 3d 1, 20 (D.D.C. 2019) (internal quotations and alterations omitted).

Texas claims summarily that vacating the Rule will "deprive Texas" of the Rule's benefits, Tex. Mem. at 10, based upon its apparent belief that vacatur of the Rule would necessarily entail reinstatement of the disfavored policy documents, *id.* at 8-9. But as a practical matter, vacating the Rule will have the same impact on Texas schools as upholding it: in both circumstances, Texas schools can continue to use sexual harassment policies and procedures that conform to the Rule. Texas identifies no law or regulation that would require Texas schools to change their policies or procedures if the Rule is vacated, much less conform their policies and procedures to prior Department policy documents. To the contrary, the Department has withdrawn its prior Title IX policy documents—including the documents with which Texas had disagreed. *See* U.S. Dep't of Educ. *Department of Education Issues New Interim Guidance on Campus Sexual Misconduct* (Sept. 22, 2017), *supra*; *see also* U.S. Dep't of Educ., *Letter to Educators and Stakeholders* (Aug. 26, 2020) (withdrawing *Revised Sexual Harassment Guidance: Harassment of Students by Sch. Emps., Other Students, or Third Parties*, 66 Fed. Reg. 5512 (Jan. 19, 2001); Stephanie Monroe, Assistant Sec'y for Civil Rights, U.S. Dep't of Educ., Office for Civil Rights, Dear Colleague Letter (Jan. 25, 2006); and U.S. Dep't of Educ., *Q&A on Campus Sexual Misconduct* (Sept. 2017)).[2] Texas is not the "mirror image" of Plaintiff States,

---

[2] https://www2.ed.gov/policy/gen/guid/fr-200826-letter.pdf.

3

Tex. Mem. at 7, because no matter how this litigation ends, the status quo for Texas schools remains the same.

In lieu of specifics, Texas expresses concern about federal enforcement actions and a general lack of clarity or increased liability. Tex. Mem. at 8-10. These arguments are misplaced. To start, Texas assigns these harms to the wrong source. It is the Department's prior policies that Texas claims caused "uncertainty," a "risk of liability," and "federal enforcement actions." *Id.* at 8-9. But vacating the Rule will not automatically reinstate withdrawn policy documents. Nor does Texas explain how vacating the Rule would lead the Department to open enforcement actions against Texas schools for retaining policies and procedures consistent with the Rule when the prior policy documents have been withdrawn. General "uncertainty" about what the Department may do in the future cannot be sufficient for intervention under Rule 24(a), otherwise any party could intervene in any administrative agency litigation upon any change in administration. And vacatur cannot increase liability because the Rule establishes only the standards for federal enforcement actions by the Department, not for private civil litigation.

Texas also assumes that vacatur of what it believes to be a beneficial regulation "necessarily" impairs its interests. Tex. Mem. at 10. But the cases Texas cites did not presume impairment without evidence of a practical effect. In *Washington Alliance of Technical Workers*, it was undisputed that vacatur of the optional practical training program for certain nonimmigrant foreign nationals admitted to the United States would cause movant employers to terminate "thousands of existing employment relationships" and be prevented from creating "thousands of new ones." 395 F. Supp. 3d at 20. In *Waterkeeper Alliance, Inc. v. Wheeler*, 330 F.R.D. 1 (D.D.C. 2018), vacatur of the EPA's approval of an Oklahoma coal ash remediation program would "effectively invalidate" an Oklahoma state law and "impede industry movants' access to the benefits of that program," *id.* at 7-8. And in *Environmental Defense Fund, Inc. v. Costle*, 79 F.R.D. 235 (D.D.C. 1978), *aff'd*, (D.C. Cir. July 31, 1978), plaintiffs were "not simply seeking a review of administrative action" but instead trying "to compel . . . some

4

nondiscretionary act" that could impair the movant's rights, *id.* at 242. Texas has not identified any similar practical consequence that would follow the Rule's vacatur.

At bottom, Texas is concerned that the Biden Administration *may* issue new Title IX policies or regulations that *could* resemble Obama-era policy documents. *E.g.*, Tex Mem. at 12. But vacatur of the existing Title IX Rule would not necessarily lead to such policies, nor is vacatur a prerequisite for the Department to initiate a new rulemaking or issue new policy documents. Likewise, Texas need not intervene in this litigation to challenge any hypothetical future action by the Department. In addition, any future action by the Department exceeds the scope of this litigation. *See NYC C.L.A.S.H., Inc. v. Carson*, 2019 WL 2357534, at *4 (D.D.C. Jun. 4, 2019) (intervention should be denied where claims presented by movant cannot be fully addressed by the court). Plaintiff States' lawsuit challenges only the existing Title IX Rule and cannot be used by an intervenor-defendant to challenge withdrawn policy documents or new regulations or policies the Department may issue in the future. Unlike *NRDC v. Costle*, 561 F.2d 904 (D.C. Cir. 1977), *see* Tex. Mem. at 10, there is no settlement agreement allowing this Court to supervise Department decision-making during promulgation of new Title IX regulations. *Cf.* 561 F.2d at 909-10 (intervention warranted because settlement allowed district court to review "important decisions of the EPA . . . about which rule-makings not to initiate" and about "timetable modifications").

The potential future actions of the Biden Administration also motivate Texas' speculation that the Department no longer adequately represents Texas' interests. Tex. Mem. at 11-12. But Texas concedes that, up until now, the Department has "adequately represented Texas' interests." Tex. Mem. at 10-11. Indeed, the Department filed a cross-motion for summary judgment on the same day Texas moved to intervene. *See* ECF Nos. 132-135. Texas is therefore *not* arguing that the Department as a government entity cannot adequately represent Texas' interests, as was central to the authority on which it relies. *See* Tex. Mem. at 11 (citing *Forest Cty. Potawatomi Cmty. v. United States,* 317 F.R.D. 6, 14-15 (D.D.C. 2016) (finding lack of

5

adequate representation because the federal government generally represents different interests than intervenors)).

Instead, Texas claims that the change in Administration, without more, warrants a finding of inadequate representation. Tex. Mem. at 11-12. In support, Texas points only to an out-of-circuit decision, *W. Energy All. v. Zinke*, 877 F.3d 1157 (10th Cir. 2017)—but even there, several Executive Orders had "created the opportunity for the [Bureau of Land Management] to conduct a review that could result in its abandonment of the Leasing Reform Policy," *id.* at 1169. Here, Texas' motion to intervene—filed before President Biden even entered office—only guesses about what the Department will do moving forward. Tex. Mem. at 12 & n.8. Among others, Texas quotes a campaign statement promising that the Rule will be gone in January 2021, which did not happen. *Id.* at 12 n.8. A candidate's promises are no guarantee of what will happen once the candidate is in office and, regardless, what the Department tries to do in terms of regulation is separate from whether it will continue to adequately defend the Rule. The adequacy of representation is too speculative at this time to justify granting intervention. *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (noting movant bears burden of showing inadequacy); *see, e.g.*, *Aref v. Holder*, 774 F. Supp. 2d 147, 172 (D.D.C. 2011) (movants "must produce something more than speculation as to the purported inadequacy" (quotations omitted)); *United States v. Microsoft Corp.*, No. 98-1232, 2002 WL 319784, at *2 (D.D.C. Jan. 28, 2002) (Rule 24 "does not require the Court to permit intervention based upon speculation that intervention may be useful for protecting one's rights").

Many states, schools, organizations, and individuals have strong views about the Rule and about how to address sexual harassment under Title IX. But strong views—including the belief that the Rule must be upheld "in its entirety," Tex. Mem. at 11—cannot alone satisfy the requirements of Rule 24(a) and grant a movant party status. Texas' motion to intervene as of right should be denied.

6

## II.     Texas is not entitled to permissive intervention.

Texas should also be denied permissive intervention. Under Rule 24(b), Texas must demonstrate an independent ground for subject matter jurisdiction, a timely motion, and a claim or defense that has a question of law or fact in common with the main action, in order for the court to consider permissive intervention. *EEOC v. Nat'l Children's Ctr. Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). Additionally, "[p]ermissive intervention is inherently discretionary and a court may deny a motion for permissive intervention even if the movant has met all of the requirements of Rule 24(b)." *Love v. Vilsack*, 304 F.R.D. 85, 89 (D.D.C. 2014) (internal quotation marks and citation omitted), *aff'd*, No. 14-5185, 2014 WL 6725758 (D.C. Cir. Nov. 18, 2014). The Court retains wide latitude to deny intervention for any reason it deems appropriate, including if intervention would needlessly complicate the litigation, derail the proceedings, or undermine expeditious implementation of a consent decree and agency order. *E.g.*, *United States v. Facebook, Inc.*, 456 F. Supp. 3d 105, 115 (D.D.C. 2020); *Aref v. Barr*, 2020 WL 7974325, at *2-3 (D.D.C. June 25, 2020); *Von Drasek v. Azar*, 2018 WL 8754165, at *1 (D.D.C. Aug. 3, 2018). "Reversal of a district court's denial of permissive intervention is a very rare bird indeed." *Facebook*, 456 F. Supp. 3d at 114 (quotations omitted).

The same reasons that require denial of intervention as of right counsel against granting permissive intervention. Texas intends to intervene to defend the Rule, but as explained above, no outcome of this litigation would impair the ability of Texas and its schools to implement the exact dictates of the Rule. Instead, Texas' interests are motivated by speculation that the Biden Administration may implement new policies and those new policies may potentially resemble Department policy under the Obama Administration. *See* Tex. Mem. at 9, 12 (asserting that "earlier guidance put Texas institutions between a rock and a hard place" and pointing to campaign statements about restoring such policy documents). But this Court has no jurisdiction to consider these hypothetical grievances. Should the Department adopt a future policy along the lines that Texas suggests, the outcome of this litigation would not prevent Texas from pursuing such a challenge once it becomes ripe.

Instead, Texas' focus on hypothetical future actions introduces new issues into the case, needlessly complicates the litigation, and raises concerns best presented as an amicus curiae. Courts in this Circuit have regularly denied permissive intervention where, as here, an amicus brief would suffice. *See, e.g.*, *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 32 (D.C. Cir. 2000) (affirming denial of intervention where standing was unclear and district court granted amicus status that enabled movants "to elucidate the court on their position"); *Facebook*, 456 F. Supp. 3d at 114-15; *Seminole Nation of Oklahoma v. Norton*, 206 F.R.D. 1, 10 (D.D.C. 2001) (denying intervention, but considering movants' brief in amicus capacity). As amicus curiae, Texas can present its unique perspective on upholding the Rule, including whether and how the matter implicates the public interest. *See, e.g.*, *Keepseagle v. Vilsack*, 307 F.R.D. 233, 249 (D.D.C. 2014) (denying intervention and noting that movants' "unique perspective" on the issues in the litigation can be adequately presented as amici curiae); *United States v. Thomson Corp.*, 1996 WL 554557, at *3 (D.D.C. Sept. 25, 1996) (declining to allow movant to intervene because participation as a party is unnecessary for it to present its views, but allowing participation as amicus to assist the court in making a public interest determination). Although the deadline to file an amicus curiae brief in support of Defendants' cross-motion for summary judgment has passed, *see* Amended Scheduling Order (ECF No. 107), Plaintiff States would not oppose a motion by Texas to participate as amicus curiae.

## CONCLUSION

For the foregoing reasons, the motion by the State of Texas to intervene as defendant should be denied.

Date: February 2, 2021                                    Respectfully submitted,

8

**GURBIR S. GREWAL**
*Attorney General*
*State of New Jersey*
MAYUR P. SAXENA
Assistant Attorney General

*/s/ Marie Soueid*
MARIE SOUEID
ESTELLE BRONSTEIN
EMILY WANGER
Deputy Attorneys General
New Jersey Attorney General's Office
Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625
(609) 376-2564
Marie.Soueid@law.njoag.gov
*Attorneys for Plaintiff State of New Jersey*

**XAVIER BECERRA**
*Attorney General of California*
*State of California*
MICHAEL NEWMAN
Senior Assistant Attorney General
CHRISTINE CHUANG
Supervising Deputy Attorney General

*/s/ Laura Faer*
LAURA FAER
CHRISTINA RIEHL
MARISOL LEÓN
SHUBHRA SHIVPURI
SRIVIDYA PANCHALAM
Deputy Attorneys General
California Attorney General's Office
1515 Clay Street, 20th Floor
Oakland, CA 94612-0552
(510) 879-3305
Laura.Faer@doj.ca.gov
*Attorneys for Plaintiff State of California*

**JOSH SHAPIRO**
*Attorney General*
*Commonwealth of Pennsylvania*
MICHAEL J. FISCHER
Chief Deputy Attorney General

*/s/ Aimee D. Thomson*
AIMEE D. THOMSON (D.C. Bar No. 1045758)
RYAN B. SMITH
JACOB B. BOYER
Deputy Attorneys General
Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
(267) 374-2787
athomson@attorneygeneral.gov
*Attorneys for Plaintiff Commonwealth of Pennsylvania*

**PHILIP J. WEISER**
*Attorney General*
*State of Colorado*

*/s/ Eric R. Olson*
ERIC R. OLSON
Solicitor General
MARTHA FULFORD (D.C. Bar No. 101194)
First Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
eric.olson@coag.gov
martha.fulford@coag.gov
*Attorneys for Plaintiff State of Colorado*

9

**KATHLEEN JENNINGS**
*Attorney General*
*State of Delaware*

*/s/ Christian Douglas Wright*
CHRISTIAN DOUGLAS WRIGHT
Director of Impact Litigation
VANESSA L. KASSAB
Deputy Attorney General
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
(302) 577-8600
christian.wright@delaware.gov
*Attorneys for Plaintiff State of Delaware*

**KARL A. RACINE**
*Attorney General*
*District of Columbia*

*/s/ Kathleen Konopka*
KATHLEEN KONOPKA (D.C. Bar No. 495257)
Deputy Attorney General, Public Advocacy Division
MICHELLE THOMAS (D.C. Bar No. 993514)
Chief, Civil Rights Section, Public Interest Division
BRENDAN DOWNES (D.C. Bar No. 187888)
NICOLE HILL (D.C. Bar No. 888324938)
SAMANTHA HALL (D.C. Bar No. 1014735)
KATE VLACH (D.C. Bar No. 1671390)
Assistant Attorneys General
Office of the Attorney General for the District of Columbia
400 6th Street, N.W., 10th Floor
Washington, DC 20001
 (202) 724-6610
Kathleen.Konopka@dc.gov
*Attorneys for Plaintiff District of Columbia*

**KWAME RAOUL**
*Attorney General*
*State of Illinois*

/s/ *Alison V. Hill*
ALISON V. HILL
LIZA ROBERSON-YOUNG
GRETCHEN HELFRICH
Assistant Attorneys General
Office of the Attorney General State of Illinois
100 W. Randolph St.
Chicago, IL, 60601
(312) 814-3954
ahill@atg.state.il.us
*Attorneys for Plaintiff State of Illinois*

**DANA NESSEL**
*Attorney General*
*State of Michigan*

/s/ *Fadwa A. Hammoud*
FADWA A. HAMMOUD
Solicitor General
TONI L. HARRIS
NEIL GIOVANATTI
Assistant Attorneys General
Michigan Department of Attorney General
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
HammoudF1@michigan.gov
Harrist19@michigan.gov
GiovanattiN@michigan.gov
*Attorneys for Plaintiff State of Michigan*

**MAURA HEALEY**
*Attorney General*
*Commonwealth of Massachusetts*

/s/ *Angela R. Brooks*
ANGELA R. BROOKS
ABIGAIL B. TAYLOR
ABRISHAM ESHGHI
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2590
angela.brooks@mass.gov
*Attorneys for Plaintiff Commonwealth of Massachusetts*

**KEITH ELLISON**
*Attorney General*
*State of Minnesota*

/s/ *Kevin Finnerty*
KEVIN FINNERTY
KATHRYN WOODRUFF
Assistant Attorneys General
445 Minnesota Street, Suite 1400
St. Paul, MN 55101-2131
(651) 757-1058 (Voice)
(651) 757-1361 (Voice)
kevin.finnerty@ag.state.mn.us
kathryn.woodruff@ag.state.mn.us
*Attorneys for Plaintiff State of Minnesota*

**AARON D. FORD**
*Attorney General*
*State of Nevada*

*/s/ Heidi Parry Stern*
HEIDI PARRY STERN
Solicitor General
Office of the Nevada Attorney General
555 E. Washington Ave., Ste. 3900
Las Vegas, NV 89101
(702) 486-3594
HStern@ag.nv.gov
*Attorneys for Plaintiff State of Nevada*

**JOSHUA H. STEIN**
*Attorney General*
*State of North Carolina*

*/s/* Sripriya Narasimhan
SRIPRIYA NARASIMHAN (D.C. Bar No: 1029549)
Deputy General Counsel
North Carolina Department of Justice
114 W. Edenton Street
Raleigh, NC 27603
(919) 716-6400
SNarasimhan@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*

**PETER F. NERONHA**
*Attorney General*
*State of Rhode Island*

*/s/ Shannon L. Haibon*
SHANNON L. HAIBON
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400 Ext. 2018
shaibon@riag.ri.gov
*Attorneys for Plaintiff State of Rhode Island*

**HECTOR BALDERAS**
*Attorney General*
*State of New Mexico*

*/s/ Tania Maestas*
TANIA MAESTAS
Chief Deputy Attorney General
PO Drawer 1508
Santa Fe, NM 87504-1508
(505) 490-4060
tmaestas@nmag.gov
*Attorneys for Plaintiff State of New Mexico*

**ELLEN F. ROSENBLUM**
*Attorney General*
*State of Oregon*

*/s/ Elleanor H. Chin*
ELLEANOR H. CHIN
BRIAN S. MARSHALL DC Bar No. 501670
Senior Assistant Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700
elleanor.chin@doj.state.or.us
*Attorneys for Plaintiff State of Oregon*

**THOMAS J. DONOVAN, JR.**
*Attorney General*
*State of Vermont*
JOSHUA R. DIAMOND
Deputy Attorney General

*/s/ Rachel E. Smith*
RACHEL E. SMITH
JULIO A. THOMPSON
Assistant Attorneys General
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
(802) 828-3171
rachel.e.smith@vermont.gov
julio.thompson@vermont.gov
*Attorneys for Plaintiff State of Vermont*

**MARK R. HERRING**
*Attorney General*
*Commonwealth of Virginia*

*/s/ Jessica Merry Samuels*

JESSICA MERRY SAMUELS (D.C. Bar No. 1552258)
Assistant Solicitor General
Office of the Attorney General
202 North Ninth Street
Richmond, VA 23219
(804) 786-6835
solicitorgeneral@oag.state.va.us
*Attorneys for Plaintiff Commonwealth of Virginia*

**JOSHUA L. KAUL**
*Attorney General*
*State of Wisconsin*

*/s/ Jeffery A. Simcox*

ANNE M. BENSKY
Assistant Attorney General
JEFFERY A. SIMCOX
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 264-9451 (Bensky)
(608) 266-3861 (Simcox)
benskyam@doj.state.wi.us
simcoxja@doj.state.wi.us
*Attorneys for Plaintiff State of Wisconsin*

**ROBERT W. FERGUSON**
*Attorney General*
*State of Washington*

*/s/ Kristin Beneski*

KRISTIN BENESKI
Assistant Attorney General
AILEEN HUANG
Deputy Attorney General
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
kristin.beneski@atg.wa.gov
aileen.huang@atg.wa.gov
*Attorneys for Plaintiff State of Washington*