IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, et al., <br><br>       *Plaintiffs*, <br><br>  v. <br><br> ELISABETH D. DEVOS, in her official capacity as Secretary of Education, et al., <br><br>       *Defendants*, <br>  and <br><br> FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION, et al, <br><br>       *Intervenor-Defendants*, <br><br>  and <br><br> STATE OF TEXAS, <br><br>       *Intervenor-Defendants*. | Case No. 20-cv-01468-CJN |

**MOTION OF WEIH STEVE CHANG
FOR LEAVE TO FILE AN AMICUS BRIEF IN SUPPORT OF DEFENDANTS**

  Pursuant to Local Rule 7.1 and by presenting the April 2014 "Checklist for Campus Sexual Misconduct Policies" ("EXHIBIT A") jointly issued by the "White House Task Force to Protect Students from Sexual Assault" and the Office on Violence against Women ("OVW")[1], Movant respectfully request leave to file the attached *amicus* brief in support of Defendants.

  The White House's Checklist for Campus Sexual Misconduct Policies of 2014 compounded the issues in this instant action. The policy directive of 2014 supersedes the "Dear Colleague Letter" of 2011. The authority of the President supersedes that of the Department of Education ("DOE").

---

[1] https://www.justice.gov/archives/ovw/page/file/910271/download

In general, because there is no rule on point district courts have "broad discretion" to permit participation "as an *amicus curiae*." *National Ass'n of Home Builders v. United States Army Corps of Eng'rs*, 519 F. Supp. 2d 89, 93 (D.D.C. 2007). This Court routinely permits amicus briefs when the brief provides "timely and useful" information for the Court. *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 846 (D.D.C. 1996) (quotation marks omitted).

This *pro se* Movant's brief, if approved, aids this Court's deliberation by offering other existing and relevant statutes, agency actions, rules, regulations, and policies that are subject to judicial review under the Administrative Procedure Act. The *pro se* brief offers "unique information or perspective" based on Movant's experiences "that can help the court beyond the help that the lawyers for the parties are able to provide." *Youming Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 136 (D.D.C. 2008).

Movant is a party in a civil action challenging the legality of the Violence against Women Act ("VAWA"), Pub. L. No. 103–322, 108 Stat. 1902 (codified at 34 U.S.C. §§ 12291–12512). Movant's action named the OVW as a defendant. VAWA covers private misconduct by both college-age males and post-college males.

In this instant action, Plaintiff States used "VAWA" seven times in their First Amended Complaint (ECF 102) indicating that the concurrent enforcement of Title IX and VAWA on college campuses is inextricably intertwined. Although handling campus sexual misconduct under Title IX and VAWA affects college-age males, Movant has parallel interests in the outcome of this instant action, as what is good for goose is good for gander.

Plaintiff States ask this Court to throw out the DOE's final rule ("DeVos Rule"), which is titled "Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance". The Final Rule recognizes the constitutional rights of the accused in part by creating a judicial-like process that gives the accused the rights to a live hearing with

multiple panel members and to cross-examine accusers, which was not previously allowed. It bars schools from allowing one person both investigate and judge complaints.

The DeVos Rule and its implementation have supported Movant's standing and constitutional claims against VAWA in his civil action. Reciprocally, Movant's brief supports the DeVos Rule and Defendants of this instant action.

Movant's brief is desirable because it provides the Court with thus far missing information of other existing authorities as related to campus sexual misconduct in addition to the "Dear Colleague Letter" and the DeVos Rule. The Court must address the question of final authority, inter-agency disputes, and superiority and legality of the policy directives from the White House Task Force.

The movant's position is not represented by a party in this instant action because Movant belongs to a different age group, post-college-age males.

The brief asserts important legal matters that are relevant to the disposition of this instant action. (1) the enforcement of Title IX and VAWA on college campuses is inseverable; (2) it is VAWA that creates a triangulating kerfuffle that floods the courts with Title IX lawsuits; (3) the Court is dealt with a paradox of Title IX vs. Title IX, and USA vs. USA, a.k.a. "a snake eating its own tail" cases. Most importantly, the brief proposes a uniquely simple and elegant legal framework to assist the Court in the disposition of this highly contentious legal dispute.

This *pro se* Movant believes each party will oppose the filing of the brief because none of the attorneys on records brought to the Court the White House's policy document that demonstrated the President's role in directing how colleges must handle campus sexual misconduct. Furthermore, attorneys representing special interest groups generally and genuinely despise *pro se* parties' equal access to courts.

This *pro se* motion is filed in a timely manner because this instant action is currently held in abeyance therefore the proposed brief does not unduly delay the Court's ability to rule on any pending matter.

For these reasons, the motion for leave to file the attached *amicus* brief should be granted.

> Respectfully Submitted,
>
> **s/ Weih Steve Chang**
> Weih Steve Chang
> 122 Pumpkin Patch Lane
> Hockessin, DE 19707
> 302-494-9992

DATE: **September 1, 2021**

**EXHIBIT A**

*This document was created by the White House Task Force to
Protect Students from Sexual Assault, April 2014*

## Checklist for Campus Sexual Misconduct Policies

The Task Force to Protect Students from Sexual Assault is committed to supporting institutions of higher education in preventing sexual misconduct, encouraging reports of such misconduct, improving responses to reports of such misconduct, and complying with applicable federal laws.

The following checklist for sexual misconduct policies (checklist) highlights elements that are particularly important for institutions to consider when drafting sexual misconduct policies as part of their overall response to sexual misconduct. The Task Force recommends using this document as a guided checklist for developing effective sexual misconduct policies. However, the Task Force cautions institutions not to adopt the checklist, in part or in whole, without first engaging in a comprehensive drafting process that considers the unique aspects of the institution and its student body.  The items listed in the checklist are intended to be guidelines, neither exhaustive nor exclusive, to help a school cover the important bases.

The policy of each institution will vary in detail, specificity, and components, reflecting differences in state or local legal requirements and each school's students, size, administrative structure, and what it has learned from past experiences. Additionally, the checklist does not constitute legal advice or create additional legal obligations, and institutions that address these elements in their sexual misconduct policy, in part or in whole, may still be found to be in violation of federal law(s) (e.g., if the institution fails to effectively address a hostile education environment created by sexual misconduct).

### Why Should a Campus Have a Separate Sexual Misconduct Policy?

The purpose of creating a sexual misconduct policy (policy) is to provide a single, easily accessible and user-friendly document for students, employees, and others affected by sexual misconduct to find information regarding an institution's rules and procedures, including the rights of students and the obligations of the institution and its employees. The policy should cover every department or school within the institution.

### How Should a Campus Develop a Sexual Misconduct Policy?

The Task Force encourages each institution to engage in a comprehensive policy drafting process.  The policy development process should be driven by campus leadership at the highest level so that the importance of this policy is clear to students, faculty, employees, and the committee drafting the policy.

### Who should participate?

To improve the quality, effectiveness, and perceived legitimacy of the policy, the Task Force encourages institutions to:

- Identify key stakeholders – particularly students, concerned student groups, including LGBTQ student groups, campus security, local law enforcement, resident assistants,

- survivors of sexual assault, and providers of victim support services, including local rape crisis centers – whose expertise and input should be incorporated into the drafting process.

- Identify the office or personnel responsible for drafting the policy, but also engage a range of administrators to ensure the policy has broad institutional support.

- Consider retaining an independent sexual assault policy expert to assist in reviewing and revising existing policies or drafting new ones.

- Engage in a vetting period where key stakeholders have multiple opportunities to provide feedback on the proposed policy to assess its clarity, quality, and effectiveness.

## Who are the target audiences for the policy?

- Review the policy to ensure that it is set out in clear, logical sections that students can follow and understand.  In determining whether the policy and its publication formats are user-friendly and appropriate in tone, policy drafters should review the material from the perspective of a student who has been affected by sexual misconduct.

- Ensure that the policy is published in a format or formats that make it readily available everywhere, including to students with disabilities and English language learners.

## What other documents should be considered during development of the policy?

- Review all applicable federal laws, including Title IX of the Education Amendments of 1972, Title IV of the Civil Rights Act of 1964, the Family Educational Rights and Privacy Act of 1974, and the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act and their implementing regulations and related guidance; any applicable state and local laws; and consult with legal counsel to ensure that the policy complies with all applicable federal, state, and local laws.

- Coordinate the policy with other institution policies and procedures, including student codes of conduct and other nondiscrimination policies affecting students and employees.

## What should happen when the policy is complete?

- Develop a plan for implementing and widely publicizing the policy to the entire campus community and provide mandatory training on the new policy.

- Establish procedures for regularly reviewing, evaluating, and updating the policy.

- Create user-friendly materials to explain the policy and how victims can get help, and provide these materials online and through other strategies appropriate for the campus.

## What Should a Campus Consider Including in Its Sexual Misconduct Policy?

The following checklist highlights elements that are particularly important for institutions to consider when drafting sexual misconduct policies:

1. Introduction
    a. Clear statement of school's prohibition against sex discrimination, which includes sexual misconduct.
    b. Statement of the school's commitment to address sexual misconduct.

2. Scope of the Policy

    a. Identify the persons, conduct, locations (including off campus), programs, activities, and relationships covered by the school's sexual misconduct policy.
    b. Clearly state the policy applies to all students and employees, regardless of sexual orientation or gender identity, and explain that the policy applies to third parties.
    c. Briefly explain the school's confidentiality policy, including reference to the more detailed confidentiality provisions in the policy. For a sample confidentiality policy go here: http://notalone.gov/assets/reporting-confidentiality-policy.pdf

3. Options for Assistance Following an Incident of Sexual Misconduct
    a. Immediate Assistance
        i. Identify and provide contact information for the trained on- and off-campus advocates and counselors who can provide an immediate confidential response in a crisis situation (e.g., obtain needed resources, explain reporting options, and help navigate the reporting process);
        ii. Provide emergency numbers for on- and off- campus safety, law enforcement, and other first responders (e.g., the Title IX coordinator);
        iii. Describe the sexual assault response team (SART) process and resources SART members can offer;
        iv. Identify health care options, both on- and off- campus:
            1. Ensure the victim is aware of the options to seek treatment for injuries, preventative treatment for sexually transmitted diseases, and other health services.
            2. Discuss the option of seeking medical treatment in order to preserve evidence.
            3. Identify where/how to get a rape kit or find a Sexual Assault Nurse Examiner (SANE).
            4. List locations, including contact information, for an advocate (e.g., a local rape crisis center, on-campus advocacy program) who can accompany a victim to the hospital or health provider.

    b. Ongoing Assistance

       i. Counseling, Advocacy, and Support – On and Off Campus
  1. Identify counseling and support for victims of sexual misconduct, whether or not a victim chooses to make an official report or participate in the institutional disciplinary or criminal process.
  2. Identify options for disclosing confidentially with counseling, advocacy, health, mental health, or sexual-misconduct-related sources, both on and off campus.
  3. Identify those who can provide ongoing support during the institutional disciplinary or criminal process.

      ii. Academic Accommodations and Interim Measures
  1. Describe the immediate steps and interim measures that the school can provide to ensure the safety and well-being of the victim, such as the ability to move dorms, change work schedules, alter academic schedules, withdraw from/retake a class without penalty, and access academic support (e.g., tutoring).
  2. Describe additional interim measures that the school may be able to provide for complainants while an investigation is pending such as no contact orders and changing the alleged perpetrator's living arrangements or course schedule. See Section 7.g about interim measures.

4. **Title IX Coordinator:** Identify the school's Title IX coordinator and briefly explain the Title IX coordinator's role in the school's overall response to sexual misconduct; provide references to sections of the policy that provide greater details regarding the Title IX coordinator's duties.

5. **Definitions**
   a. Clearly define all conduct prohibited by the policy, including:
      i. Sexual harassment
      ii. Hostile environment caused by sexual harassment
      iii. Sexual assault
         1. Non-consensual sexual contact, and
         2. Non-consensual sexual intercourse
      iv. Domestic violence
      v. Dating violence
      vi. Sexual exploitation
      vii. Stalking
      viii. Retaliation
      ix. Intimidation
   b. Additional terms that should be defined include:
      i. Consent
      
      The input of students and sexual assault experts can be helpful in developing a definition of consent. At minimum, the definition should recognize that:

      - consent is a voluntary agreement to engage in sexual activity;
      - someone who is incapacitated cannot consent;
      - past consent does not imply future consent;

4

Case 1:20-cv-01468-CJN   Document 153   Filed 09/09/21   Page 9 of 13

EXHIBIT A

- silence or an absence of resistance does not imply consent;
- consent to engage in sexual activity with one person does not imply consent to engage in sexual activity with another;
- consent can be withdrawn at any time; and
- coercion, force, or threat of either invalidates consent.

  ii. Incapacitation (such as due to the use of drugs or alcohol, when a person is asleep or unconscious, or because of an intellectual or other disability that prevents the student from having the capacity to give consent)

6. Reporting Policies and Protocols
   a. Identify formal reporting options – e.g., criminal complaint, institutional complaint, report to "responsible employee," including the Title IX coordinator. Explain how each option works and include contact information for the people to whom one can make a report.
   b. Identify alternatives to reporting – e.g., privileged or confidential disclosures
   c. Describe policies governing confidentiality
      i. Specify those employees to whom a student can disclose in confidence and those "responsible employees" who must report incidents (including personally identifying details ) to the Title IX Coordinator.  Consider particularly how a school will ensure that a student understands an employee's reporting obligation before he or she reveals any information to that employee.
      ii. Describe what information will be kept confidential and what information may be disclosed, to whom it will be disclosed, and why.
      iii. Explain when the school may not be able to honor a student's request that his or her name not be disclosed to the alleged perpetrator or that no investigatory or disciplinary action be taken.  Identify the employee responsible for evaluating such requests for confidentiality or no action.
   d. Explain the school's reporting obligations under the Clery Act, including the annual reporting responsibilities of Campus Security Authorities and the school's obligation to issue timely warnings.
   e. Explain the process for third-party and anonymous reporting.
   f. Ensure the policy prohibits retaliation against those who file a complaint or third-party report, or otherwise participate in the investigative and/or disciplinary process (e.g., as a witness), and explain that the school will take strong responsive action if retaliation occurs.
   g. Describe when the school will grant amnesty from drug, alcohol, and other student conduct policies.

7. Investigation Procedures and Protocols
   a. Identify the Title IX Coordinator(s) and explain roles and responsibilities.
   b. Identify who conducts the investigation and what an investigation might entail.
   c. Specify a reasonably prompt time frame for conducting the investigation and resolving the complaint, as well as the process for extending the timeframe.
   d. Explain the processes for preserving evidence.

**EXHIBIT A**

    e. Provide the respondent and complainant equitable rights during the investigative process.
    f. Set forth parameters and clarify what information may and may not be shared during a parallel investigation with law enforcement (e.g., via a Memorandum of Understanding with local law enforcement).
    g. Explain that where necessary, the school will take immediate steps to protect complainants pending the final outcome of an investigation, including academic accommodations and other interim measures. These steps may include the ability to change housing or dining facilities; change work schedules; alter academic schedules; withdraw from/retake a class without penalty; access academic support such as tutoring; issue no contact orders; and change the alleged perpetrator's living arrangements or course schedule.
    h. Explain the school's response if a victim's request for confidentiality limits the school's ability to investigate a particular matter. A school may take steps to limit the effects of the alleged sexual misconduct and prevent its recurrence without initiating formal action against the alleged perpetrator or revealing the identity of the student complainant. Examples include: providing increased monitoring, supervision, or security at locations or activities where the misconduct occurred; providing training and education materials for students and employees; revising and publicizing the school's policies on sexual misconduct; and conducting climate surveys regarding sexual misconduct.

8. Grievance/Adjudication Procedures
    a. Explain the grievance/adjudication process, including:
        i. that mediation is never appropriate in sexual misconduct cases;
        ii. that the preponderance-of-the-evidence (i.e., more likely than not) standard will be used in any Title IX fact-finding and related proceedings, including any hearings;
        iii. identify the adjudicators, including:
            1. the trained individuals who determine whether the alleged sexual misconduct occurred
            2. the individuals who determine the sanction
            3. a process by which either party may raise issues related to potential conflicts of interest of such individuals
        iv. the persons who may attend and/or participate in the adjudication process and the extent of that participation.
    b. Outline the rights and roles of both parties in the adjudication process, including:
        i. notice of hearing(s) to both parties;
        ii. an opportunity for both parties to present witnesses and other evidence, including:
            1. a description of the types of evidence that may or may not be presented, including but not limited to:
                a. prohibiting questioning or evidence about the complainant's prior sexual conduct with anyone other than the alleged perpetrator

    b. clarifying that evidence of a prior consensual dating or sexual relationship between the parties by itself does not imply consent or preclude a finding of sexual misconduct
   2. if the school conducts a hearing, and generally allows for cross-examination, a description of alternative methods that preclude the respondent from personally cross-examining the complainant
  iii. extension of any other rights given to the alleged perpetrator to the complainant.
 c. Explain the possible results of the adjudication process, including:
  i. sanctions;
  ii. remedies/accommodations for the victim;
  iii. additional remedies for the school community.
 d. Outline how the parties will be informed of the results of the adjudication, including:
  i. simultaneous written notice to both parties of the outcome of the complaint and the option to appeal, if applicable;
  ii. a statement that the school will not require a party to abide by a nondisclosure agreement, in writing or otherwise, that would prevent the redisclosure of information related to the outcome of the proceeding.
 e. Describe the appellate procedures (if appeals are permitted), including grounds for appeal, standards of review, the person/entity that will decide appeals, and the applicable reasonably prompt time frames.

9. Prevention and Education
Outline the school's approach to prevention, including type and frequency of prevention programming and educational/outreach activities. Include bystander intervention and programs to educate students about the school's sexual misconduct policies.

10. Training
 a. Outline how faculty and staff are trained and on what issues.
 b. At a minimum, the Title IX coordinator, law enforcement, "responsible employees," victim advocates, and anyone else who is involved in responding to, investigating, or adjudicating sexual misconduct must receive adequate training.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> ELISABETH D. DEVOS, in her official capacity as Secretary of Education, et al., <br><br> *Defendants*, <br><br> and <br><br> FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION, et al, <br><br> *Intervenor-Defendants*, <br><br> and <br><br> STATE OF TEXAS, <br><br> *Intervenor-Defendants*. | Case No. 20-cv-01468-CJN |

## **[PROPOSED] ORDER**

Upon consideration, Motion of Weih Steve Chang for Leave to File an Amicus Brief in Support of Defendants is hereby **GRANTED**.


DATE: _____, 2021          _____
                                        CARL J. NICHOLS
                                        United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, et al., <br><br>                 *Plaintiffs*, <br>    v. <br><br> ELISABETH D. DEVOS, in her official capacity as Secretary of Education, et al., <br><br>                 *Defendants*, <br>    and <br><br> FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION, et al, <br><br>                 *Intervenor-Defendants*, <br>    and <br><br> STATE OF TEXAS, <br><br>                 *Intervenor-Defendants*. | Case No. 20-cv-01468-CJN |

**CERTIFICATE OF SERVICE**

     I, Weih Steve Chang, certify that on September 1, 2021, I caused a copy of the foregoing documents to be filed with the Clerk via email to DCDml_Intake@dcd.uscourts.gov, or the Pacer System, which, as I understand it, causes a copy to be sent to all counsel of record.

                                              **s/ Weih Steve Chang**
                                              Weih Steve Chang
                                              122 Pumpkin Patch Lane
                                              Hockessin, DE 19707
DATE: **September 1, 2021**                   302-494-9992